Elack SWEET

v.

RITTER FINANCE COMPANY,
Covington, Virginia.
No. 66–C–13–R.

United States District Court
W. D. Virginia,
Roanoke Division.

Jan. 30, 1967.

A. B. Davies, Jr., Clifton Forge, Va., for petitioner.

Kurt Berggren, Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., for respondent.

## OPINION

MICHIE, District Judge.

Jurisdiction having been assumed in order to protect and give effect to a former discharge in bankruptcy, as outlined in an earlier opinion in the above-styled case, an evidentiary hearing was held on August 29, 1966 and the parties were given the opportunity to argue their respective positions on the merits.

Elack Sweet, the petitioner, seeks injunctive relief to prevent Ritter Finance from enforcing a judgment it had obtained in a state court on a loan made to the petitioner. He contends that his discharge in bankruptcy, received May 6, 1964, relieves him of any further liability on all of his debts incurred prior to that date, including the debt concededly formerly owed to defendant Ritter Finance. This debt arose from the renewal of a note signed by petitioner and his wife on July 3, 1963 which, with interest, now amounts to approximately one thousand dollars. Ritter Finance submits that the debt was non-dischargeable because it falls within one of the exceptions set out in § 17(a) (2) of the Bankruptcy Act, 11 U.S.C. § 35(a) (2). Under this section a debt is non-dischargeable if it is obtained by "false pretenses or false representations". According to defendant's theory of the case, Elack Sweet obtained the loan in question by a false representation when he signed a financial statement that did not list, as required by the printed instructions, all of his creditors existing at that time. Circumstances surrounding the signing of this false financial statement constitute most of the relevant evidence presented to this court.

Elack Sweet and his wife, Charlotte, on July 3, 1963, discovered that they immediately needed a small amount of money. Mrs. Sweet called Ritter Finance and asked if the Sweets could borrow this money. Having received an affirmative reply, the Sweets went to the Ritter Finance office located in Covington, Virginia, arriving late that afternoon. Most of the loan papers were prepared by Ritter Finance when the Sweets arrived. It seems that the Sweets had been doing business with Ritter Finance for more than five years and had never been out of debt during that period. They had owed Ritter Finance an amount averaging between three hundred to six hundred dollars.

After the Sweets had gotten to the Ritter Finance office, an agent of the Company, Mr. Morris Smith, took the couple into a room where Charlotte Sweet signed, among other things, a financial statement and evidently filled in the space in which a borrower's outstanding debts were to be listed. Mr. Sweet signed the

statement also. The entire business transaction was completed in "no more than two minutes," according to Mr. Sweet's undisputed testimony. It was uncontroverted that Elack Sweet could not read, nor could he write except to sign his name. He admits that he knew he had several debts outstanding on July 3, 1963 but he also says that Mr. Smith never asked *him anything about these debts.* When questioned on whether he knew what his wife was doing when she was filling in the financial statement, he said, "I know she wrote something but I don't know what she wrote." When asked if he recognized his wife's signature, Mr. Sweet said he did not. After signing this renewal note, which was for a principal of $600.00 with 30% interest due on the first three hundred dollars and 18% due on the remainder, the Sweets were given the grand total of $27.00 and some cents. The remainder of the $600.00 note went to pay off old debts owed to Ritter Finance.

Though he remembers talking to the Sweets, Mr. Smith does not remember any of the details of this transaction. He admits that he may not have questioned the Sweets at all concerning their outstanding debts. No other agent of Ritter Finance was involved.

This case is far from being an unusual one. Instead (unfortunately) it represents a rather typical situation which can and probably does occur every day. A couple like the Sweets with limited or no education walk into a small loan office and request a loan. The loan company, asking few questions, if any, gets the couple to sign "a few necessary papers" at an exhorbitant and often well disguised interest rate and hands them twenty-five dollars or so which the couple will spend in a few days only to return later and ask for a similar loan. Should the borrower receive a discharge in bankruptcy, the loan company will quickly step forward with the financial statement signed by the debtor during one of the previous loan transactions and claim that the company was misled into extending credit by a false financial statement. Whether the loan company should or should not be taking advantage of a borrower's ignorance in this manner is really a moral question not to be decided by a court of law. But the frequency with which this type transaction occurs is significant in another respect. It indicates that many small loan companies are well aware of the unsound financial positions many of their clients are in and are willing to lend money in spite of this cognizance—without further inquiry. This willingness to lend with an almost studied disregard for the truth undoubtedly created by the high interest charged is enough in many instances to preclude a later claim by the loan company that its reliance on a false financial statement was reasonable.

Ultimately, the issue that must be decided in the instant case is whether the debt owed Ritter Finance by Elack Sweet is non-dischargeable under § 17(a) (2) of the Bankruptcy Act, 11 U.S.C. 35(a) (2). The relevant part of that section provides:

> (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * *
>
> (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * * *.

Note that this section is to be distinguished from 11 U.S.C. § 32(c) (3) which is concerned with whether one is entitled to a discharge of any debts. See In Re Bell, 212 F.Supp. 300 (E.D.Va.1962).

Once a person has a valid discharge in bankruptcy, as Elack Sweet does, he has a prima facie defense against all debts and the burden of proof is then on the creditor to show that the debt is non-dischargeable. United States v. Syros, 254 F.Supp. 195, 198 (E.D.Mo.1966).

And Ritter Finance did not affect the dischargeability of its claim against Sweet by reducing it to judgment in a state court. See Hisey v. Lewis-Gale Hospital, 27 F.Supp. 20, 24 (W.D.Va. 1939).

Not only does Ritter Finance have the burden of proof, but it is also faced with the rule that all exceptions set forth in § 17(a) (2) are to be strictly construed. Gleason v. Thaw, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). Ritter Finance must prove actual fraud before it can show Sweet's debt to be nondischargeable under § 17(a) (2). In other words, Ritter Finance must show by a preponderance of the evidence that (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. Friendly Finance Co. v. Stower, 109 Ga.App. 21, 134 S.E.2d 837 (1964). See also United States v. Syros, supra, and 1 Collier on Bankruptcy § 17.16.

Though it might be argued with some justification that Elack Sweet did not even make the false representations involved, that it was Mrs. Sweet who made the false statement and that Elack Sweet, a man who can neither read nor write, can not be held accountable for representing something in writing which he did not write and which he cannot comprehend, this court does not have to consider such a point. It is apparent from the evidence presented that Ritter Finance has failed to prove two additional elements necessary to make a debt nondischargeable under § 17(a) (2), namely, that there was reasonable reliance on the financial statement by Ritter Finance and that there actually was fraudulent intent to deceive on Sweet's part. The absence of either element is enough to support a judgment for Elack Sweet in this case.

Typical of cases which are analogous to the case at bar is Cash Finance Service, Inc. v. Haisch, 173 So.2d 851 (La.App. 1965). In that case the loan company was suing to collect on a promissory note executed by the defendant on July 29, 1963. While the suit was pending, the defendant received a discharge in bankruptcy. The loan company filed a supplemental petition alleging that its debt was not discharged for the reason that it made the renewal involved in reliance upon a false financial statement executed by the borrower who had the intention of deceiving and misleading the loan company. The financial statement failed to list all of Haisch's outstanding creditors.

The court pointed out that the money lender had been doing business with the defendant for a number of years during which time the defendant was almost continuously indebted to plaintiff on original loans or renewal notes. It was apparent from the testimony and the financial statement exhibited that the borrower was of a very limited education though he could read and write to a very small extent. Like the Ritter Finance Company, Cash Finance Service made no effort to check the borrower's credit and an inquiry directed to a credit organization of which Cash Finance Service was a member would have revealed the additional indebtedness due the other finance company. After discussing some obvious deficiencies in the financial statement, the court held that the note was dischargeable despite the false financial statement, saying:

> We are not unaware of the possibility that a financial statement may be obtained without any serious intent to rely thereon but merely for the purpose of contesting a possible subsequent discharge in bankruptcy. And we are satisfied that in the instant case plaintiff did not make a serious effort to obtain a complete and accurate financial statement. We are also of the opinion that no person or company regularly engaged in the business of lending money reasonably would rely upon the financial statement here involved.

Our conclusion is that plaintiff did not rely upon the financial statement in accepting the renewal note and the debt was discharged in bankruptcy.

Cash Finance Service, supra at 854.

■ While the Cash Finance case may be distinguishable on certain factual points, the above-quoted language is clearly applicable to the case at bar. After considering the Sweets' prior history of indebtedness to Ritter Finance and the company's past experience in the lending business, it seems that one must inevitably conclude that it was not reasonable for that company to rely on a statement placed in front of a man who could neither read nor write without at least asking him a few questions pertinent to the statement on which he put his signature. In this light Ritter Finance has failed to prove that it was in fact relying on the false financial statement when it renewed the Sweet loan. In the words of one court:

> When a small loan company has been doing business satisfactorily with a borrower for many years, and has the means to check his financial responsibility, * * * but closes its eyes, it should be estopped to complain of misrepresentation. If it were otherwise, a creditor could easily make its credit or loan immune from discharge in bankruptcy by the simple expedient of closing its eyes to what is obviously not true, and easily detected.

Excel Finance Mid City, Inc. v. Meilleur, 137 So.2d 503 (La.App.1962).

■ Just as Ritter Finance has failed to prove that it relied on the false financial statement, it has also failed to show that Elack Sweet had any actual intent to deceive the loan company. No one can seriously dispute the fact that the Bankruptcy Act contemplates positive fraud as distinguished from implied fraud. See Western Union Cold Storage Co. v. Hurd, 116 F. 442 (C.C.1902). What this means is that any actual intent that Mrs. Sweet may have had cannot be imputed to Elack Sweet. There is no significant trace in the evidence of the kind of recklessness on Sweet's part in relying on his wife's signature as was found in David v. Annapolis Banking & Trust Co., 209 F.2d 343 (4th Cir. 1953). Evidence presented in the instant case falls far short of proof of actual intent to defraud.

In accord with the foregoing, a judgment will be entered for petitioner, Elack Sweet. His counsel is hereby requested to prepare an appropriate order, submit the same to opposing counsel for approval as to form and then present it to the court for entry.