In the Matter of James P. HAAS, Debtor.

COMBANK/SEMINOLE COUNTY, Plaintiff,

v.

James P. HAAS, Defendant.

Bankruptcy No. 81–325 Orl BK AP. Adv. No. 82–145.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 18, 1983.

Lynn James Hinson, Orlando, Fla., for plaintiff.

Deno P. Dikeou, Fern Park, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a Chapter 11 case involving James P. Haas, the Debtor and the matter

under consideration is the dischargeability, vel non, of a debt admittedly owing by the Debtor to ComBank/Seminole County (ComBank), the Plaintiff who instituted this adversary proceeding. The claim of non-dischargeability is based on the charge set forth in the complaint filed by ComBank that the Debtor obtained money from Com-Bank through actual fraud, therefore, according to ComBank, the same shall be declared to be non-dischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

The facts relevant to the resolution of this controversy as established at the final evidentiary hearing are as follows:

During the years 1970 through 1976, the Debtor acquired a number of limited partnership interests in an entity known as "Petro-Search Exploration Corporation" (Petro-Search). On December 11, 1979, the Debtor entered into a transaction by executing an "Exchange Offer Letter of Acceptance and Proxy" whereby he agreed to exchange his interest in this limited partnership for 899 shares of Howell Petroleum Corporation (Howell) common stock. The Exchange Offer Letter of Acceptance and Proxy was received by Texas Commerce Bank, the stock transfer agent (Transfer Agent) for Howell on December 17, 1979. On or about January 10, 1980, in accordance with the Exchange Offer Letter of Acceptance and Proxy, the Transfer Agent mailed stock certificate number HS1878 representing 899 shares of Howell common stock to the Debtor.

Prior to January 11, 1980, the Debtor had several telephone conversations with one Robert Ward, a stock broker who at that time was employed in the Denver, Colorado office of E.F. Hutton and Co. The conversation related to a possible exchange of his partnership interest in Petro-Search for the 899 shares of Howell common stock. Prior to January 11, 1980, the Debtor advised Ward on the telephone that he was to receive 899 shares of Howell stock in exchange for his interest in the limited partnership of Petro-Search and directed Ward to sell 800 shares of his Howell stock. Ward, acting as a broker for E.F. Hutton, proceeded to do so, even though at that time he had no possession of any stock certificate. The settlement date for completing the stock sale of the 800 shares in the Howell common stock was scheduled for January 18, 1980, but the Debtor failed to deliver the Howell stock to E.F. Hutton by the settlement date. Ward called the Debtor prior to the settlement date and sought to determine whether or not the Debtor did mail the stock certificates and he informed the Debtor that as of that date, he had not received the stock certificates yet.

On January 28, 1980, the Debtor approached ComBank and inquired about the possibility of obtaining a loan from the Bank and represented to the officer of the Bank that he was the owner of 899 shares of stock in Howell, which he could pledge as collateral for the loan. On January 28, 1980, the Debtor obtained a loan from the Bank in the principal amount of $25,000 and executed the pledge of the Howell corporate stock, certificate number HS1878, which represented the 899 shares of Howell common stock. In fact he had already delivered the stock certificate to an officer of the Bank. In addition, the Debtor also executed a security agreement which specifically stated that the Debtor was the owner of the collateral, i.e. the pledged stock, free of any adverse liens or claims, security interests, or encumbrance.

Of course, this representation was false since the Debtor had already sold 800 shares of his Howell common stock earlier through E.F. Hutton. At no time prior to the time the loan was made did the Debtor inform the Bank that he had already sold 800 shares and had only 99 shares of Howell common stock left.

On February 6, 1980, the Debtor wrote to the Transfer Agent stating that he has not yet received his Howell stock; that he had good reason to believe that the stock certificates had been lost or destroyed. This letter was written only nine days after the same stock certificate was pledged by him as collateral for the loan. He further stated to the Transfer Agent that it was his desire to have the stock certificate cancelled

and the new stock certificate reissued as soon as possible. Thereafter, the Debtor executed an affidavit stating that he never received the Howell stock certificate number HS1878 and mailed the affidavit to the Transfer Agent, who in due course issued a new stock certificate number HS8761 representing 899 shares of common stock in Howell. The Transfer Agent also placed a stop order on Howell's stock certificate number HS1878. Upon receipt of same, the Debtor mailed the new stock certificate number HS8761 to E.F. Hutton in order to permit the broker to complete the sale of the stock which he had ordered to be sold earlier on January 11, 1980 before he applied and obtained the loan from ComBank. On August 6, 1980, E.F. Hutton mailed a check in the amount of $14,873.19 representing the proceeds from the sale of the 800 shares of the Howell stock.

On February 6, 1981, the Debtor again approached ComBank and sought a renewal of the loan obtained from ComBank on January 20, 1980. At the time the Debtor approached ComBank regarding the renewal of the loan, the loan was already in default. On February 6, 1981, the Debtor executed an installment note, a disclosure statement, a security agreement in favor of ComBank in order to renew the loan originally made on January 28, 1980. In these instruments, the Debtor stated the collateral for the renewal of the loan to be the 899 shares of Howell stock represented by Howell stock certificate number HS1878. The statement further indicated that the Debtor warranted that he was the owner of the collateral free and clear of all liens and encumbrances. This representation was false, of course, since the Debtor had already reported to the Transfer Agent that that particular certificate was lost and, as noted earlier, he had already obtained a replacement certificate. The Debtor never informed ComBank that he had reported the stock originally pledged as lost or that he obtained a replacement stock certificate.

On December 21, 1981, during the pendency of this proceeding, this Court granted relief from the automatic stay and authorized ComBank to proceed against the collat-

eral for the loan which the Debtor procured based on his representation of ownership of stock certificate number HS1878 to ComBank. On the following day, ComBank proceeded to sell the stock and received a total of $12,094.48 for the stock after the deduction of the broker's commission. Shortly thereafter, ComBank learned for the first time that a stop order had been placed on certificate number HS1878 by the Transfer Agent who refused to recognize the transfer and confiscated the stock certificate number HS1878, the collateral pledged by the Debtor for the loan granted by ComBank. As a result, ComBank was required to purchase 899 shares of common stock on the open market in order to fulfill its committment to sell the stock. During the period between the original sale and the date ComBank was required to purchase 899 shares of Howell stock, the price of the stock had risen in value and ComBank was to pay for the stock. ComBank used its own funds to purchase the stock and, therefore, as a result of the transaction ComBank clearly sustained a loss of $3,945.84.

In addition, the claim of ComBank which originally was intended to be, and seemingly was, a fully secured loan secured by the stock certificate pledged by the Debtor, ComBank has nothing but an unsecured claim in this proceeding. The amount due on the installment note dated February 6, is $12,766.83 principal together with accrued interest of $627.83 making a total of $13,-394.42.

The claim of non-dischargeability is based on § 523(a)(2)(A) which provides as follows:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;"

 Under this Section, it is a burden on the plaintiff to establish with the requi-

site degree of proof that the defendant did, in fact, obtain money or property by false pretenses or by actual fraud from the plaintiff. Section 523(a)(2)(A) does not materially differ from the corresponding Section of the pre-Code law, § 17(a)(2) of the Bankruptcy Act of 1898. As noted in *Colliers,* the fraud embraced by this Section involves "moral turpitude or intentional wrong." 3 *Colliers on Bankruptcy,* § 523.08 (15th ed. 1982). Indeed, a showing of implied fraud or conduct which only creates a suspicion of fraud is legally insufficient. *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540 (W.D.Va. 1967); *Friendly Finance Service Mid-City, Inc. v. Windham,* 240 So.2d 26 (La.App. 1970).

■ Applying these legal standards to the facts as established in this case, this Court is satisfied that ComBank did establish with the requisite degree of proof all the operating elements of the claim of non-dischargeability under this Section and, therefore, is entitled to the relief it seeks. There is no doubt and the record is crystal clear in this instance that the Debtor did obtain money from ComBank; that not only did he obtain money, but obtained money by the false representations that he was the owner of the 899 shares of common stock in Howell; that he owned those stocks free and clear of any liens, claims or encumbrances and ComBank, in reliance on that statement, accepted the common stock as collateral and granted the loan requested by the Debtor.

A separate final judgment will be entered in accordance with the foregoing.