In the Matter of James A. CURL and Cathy J. Curl, Debtors.

Mary Edith COWAN, Plaintiff,

v.

James A. CURL and Cathy J. Curl, Defendants.

Bankruptcy No. 84–00412–SJ.
Adv. No. 85–0045–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

May 16, 1985.

Peter M. Schloss, Coulson & Chick, Kansas City, Mo., for plaintiff..

Mark G. Stingley, Utz, Litvak, Thackery, Utz & Taylor, St. Joseph, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE OF NONDISCHARGEABILITY OF THE INDEBTEDNESS OF THE DEFENDANT JAMES A. CURL TO PLAINTIFF IN THE SUM OF $8,500 AND FINAL JUDGMENT THAT PLAINTIFF SHALL HAVE AND RECOVER THE SAME SUM FROM THE DEFENDANT JAMES A. CURL

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff sues for a decree of nondischargeability of the defendants' indebtedness to her, alleging that it is a liability based on fraud within the meaning of section 523(a)(2) of the Bankruptcy Code. The issues joined by the pleadings came on before the court for a hearing of their merits on April 10, 1985, in St. Joseph, Missouri. The plaintiff appeared personally and by counsel, Peter Schloss, Esquire, and the defendants appeared personally and by counsel, Mark G. Stingley, Esquire. The evidence which was then adduced warrants the following findings of fact.

### Findings of Fact

In March 1983, the plaintiff was the owner of 30 head of cattle. They were all ready to calve, according to her uncontradicted testimony, within two weeks of March 4, 1983. The defendant James A. Curl came to the residence of the plaintiff and requested to "write up a contract for the cows." The plaintiff agreed to sell him the cows for $50 per head for 330 head of cattle. He agreed to purchase the cows for a series of payments in the total sum of $16,500[1] which were to be made annually on the first of December for three years. The cattle were to remain on the plaintiff's pasture, which the defendant James A. Curl was to rent from her. But he did not make any of the yearly payments. Although he issued her three checks (which were postdated) for the yearly payments, they were never offered to be honored by him. The defendant claims that he was unable to fund the checks. And the checks were all ultimately returned to plaintiff for insufficient funds by the drawee bank. One of the checks was presented by the plaintiff to the drawee bank for payment after the date of bankruptcy.[2] The defendant paid the plaintiff half the amount agreed upon for pasture rental, but no more. He additionally failed to mow the pastures, causing plaintiff to incur an additional expense of $427. In order to induce the plaintiff to enter into the contract with him, Mr. Curl told plaintiff that she would save an indeterminate amount in taxes through a tax device which was never explained in the evidence which was presented to this court. He also advised her that

---

1. This figure is arrived at by accepting the defendant's testimony with respect to the consideration which was to be paid for the cattle. His oral testimony in this regard is not contradicted.

2. It is intimated by counsel for the defendants that such may have been a violation of the automatic stay. The evidence, however, does not go sufficiently far in this action to establish such a violation. Under the rule of *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), checks written before bankruptcy may be cashed thereafter if this is done consistently with the innocent intention of the payee. It appears that any transfer effected may be voidable under section 549 of the Bankruptcy Code, but it appears that no transfer was effected in this case.

he would pay all the checks when they came due, but he never did. During the time in which the defendant James A. Curl had charge of the cattle, he did not take good care of them, according to plaintiff's testimony. Resultingly, some of them died. He used some 39 large bales of hay, however, for which he never paid the plaintiff their value of $585. Admittedly, however, the defendant Cathy J. Curl had no part in these events. The plaintiff testified that she had never talked to Cathy J. Curl in any material respect with reference to the cattle. After the date of bankruptcy, the plaintiff regained possession of what remained of the cattle and sold them for a total price of $8,000. This was done even though she did not have a security interest in them.[3]

It was the testimonial contention of the defendant James A. Curl that he was to make the initial payment to the plaintiff only when he sold the first calf crop; that he was unable to sell the calf crop as early as December 1983, the nominal due date of the first annual payment, because of a "very depressed" cattle market at the time; that he advised the plaintiff in December 1983 of his inability to sell the cattle; that he then reassured her that, as soon as he sold them, she would get her money; that, at a later time, he again advised her that he still had the cattle and she either consented

to or acquiesced in nonpayment at this time; and that, in February 1984, he filed his chapter 7 petition. On cross-examination, the defendant James A. Curl admitted that he had been a cattle trader for some 14 years; that he had never, on any prior occasion, been able to convince another person to accede to an agreement like that which he had gotten plaintiff to agree to. He further admitted that it was he who had approached plaintiff, who was a widow, about selling the herd.

### Conclusions of Law

■ The rules which govern a nondischargeability action based upon fraud under section 523(a)(2) of the Bankruptcy Code[4] seem carefully crafted to place a high and difficult burden of proof on the plaintiff to prove affirmative, actual fraud by showing an intentional misrepresentation reasonably relied upon by the plaintiff to its detriment.[5] Almost by historical accident, furthermore, the rule has grown up that these elements must be demonstrated by clear and convincing evidence, rather than by a simple preponderance of the evidence.[6] The jagged reef against which most attempts to prove this species of fraud meet disaster is that of the necessity of showing a fraudulent intention at the time of the debtor's making the representa-

---

**3.** The evidence is uncontradicted to this effect. Still, the transfer of value may have been proper if it can be attributable to the debtors' exemptions. Otherwise, the trustee may undertake, under the provisions of section 549 of the Bankruptcy Code, to avoid and recover any unlawful postpetition transfers. But that is a matter in which the issues are not joined by the pleadings and evidence now before the court.

**4.** That section provides that "(a) discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for obtaining money, property, services, or an extension, renewal, or refinance of credit by ... false pretenses, a false representation, or actual fraud, ..."

**5.** "This section has traditionally been subject to the same rule of strict, literal construction governing all other exceptions to the Bankruptcy Act ... Courts have consistently held that in order for section 17(a)(2) to bar a discharge, the party alleging fraud must prove actual or positive fraud, not merely fraud implied by law ...

This fraud is the type involving moral turpitude or intentional wrong, and thus there can be no mere imputation of bad faith. According to *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967), the objecting party's burden of proof consists of five elements: '... (1) the debtor made the representations; (2) that at the time he knew they were false; (3) *that he made them with the intention and purpose of deceiving the creditor;* (4) that the creditor relied on such representations, and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.' (Emphasis supplied.)" *In re Taylor,* 514 F.2d 1370, 1373 (9th Cir.1975).

**6.** The pioneer decision which is repeatedly cited on the elements of fraud, cf. note 5, *supra,* and the burden of proof in dischargeability proceedings is *Sweet v. Ritter Finance Company,* 263 F.Supp. 540, 543 (W.D.Va.1967), which unequivocally holds that the elements of fraud must be shown "by a preponderance of the evidence." Yet, although nearly all the cases deciding sec-

tion 523(a)(2) issues have relied upon the *Sweet* case, *supra,* for its statements of the elements of a fraud action, virtually none of them has adopted the "preponderance of the evidence" standard. Some bankruptcy courts, however, have adopted the "preponderance of the evidence" standard in section 523(a)(2) cases. See, e.g., *In re Baiata,* 12 B.R. 813, 817 (Bkrtcy.E.D. N.Y.1981). But see *Matter of Newmark,* 20 B.R. 842, 853 (Bkrtcy.E.D.N.Y.1982), and cases there cited to the effect that "(i)t has become 'well established' that the standard of proof imposed on the creditor is that of clear and convincing evidence." The state laws reflect the same divided authority on whether proof should be by a preponderance of the evidence or by clear and convincing evidence. See, e.g., *L & S Enterprises Company v. Great American Insurance Company,* 454 F.2d 457, 460 (7th Cir.1971) ("(F)raud need only be proved by the preponderance of the evidence.") (applying Illinois law); *Calhoun v. Baylor,* 646 F.2d 1158, 1163 (6th Cir. 1981) ("Tennessee law requires proof (of fraud) by only a preponderance of the evidence."). This division continues to plague the bankruptcy process, despite the fact that, at least under the modern Bankruptcy Code, the bankruptcy courts were to develop a general law of bankruptcy which would be uniform so that the resolution of the issues in dischargeability cases would not depend upon the differences between the laws of the states. The most recent bankruptcy hornbook states without equivocation that, "(U)nder the Bankruptcy Act of 1898, to bring a debt within the exception of Section 17(a)(2), the fraud had to be proved by clear and convincing evidence." 3 Collier on Bankruptcy para. 523.08(5), pp. 523–53, 523–54 (15th ed. 1985). The case decisions which are said to support this statement are based upon general considerations that "the presumption is that all men are honest, that individuals deal fairly and honestly, that private transactions are fair and regular, and that the participants act in honesty and good faith." *In re Huff,* 1 B.R. 354, 1 C.B.C.2d 171, 173 (Bkrtcy.D.Utah 1979), quoting from 37 C.J.S. *Fraud* section 94. That section, however, says absolutely nothing about imposing a standard of "clear and convincing evidence." In fact, the same encyclopedia goes on to state that:

"Fraud must be established by a preponderance of the evidence. Although a court or jury should be cautious in arriving at conclusions prejudicial to character and honesty, a preponderance of evidence such as is required in civil cases is ordinarily sufficient to show fraud, provided the proof is clear and strong enough to preponderate over the general and reasonable presumption that men are honest and do not ordinarily commit fraud or act in bad faith. However, the courts have frequently stated that fraud must be established by evidence that is clear and convincing, expressing this principle in various ways, as by saying that fraud must be clearly, distinctly, and fully proved, or that a charge of fraud must be established by evidence that is clear, clear and positive, clear and satisfactory, clear and satisfactory to a reasonable certainty, clear, satisfactory, and convincing, clear, cogent and convincing, clear, cogent and reliable, clear, cogent, convincing, positive and satisfactory, clear, precise, and indubitable, clear, precise, and unequivocal, clear, unequivocal and convincing, full, full, clear, and satisfactory, positive and definite, satisfactory, strict, strong, clear and convincing, strong, cogent, and convincing, or exceptionally strong, or by evidence of such a nature as to impel the mind of a reasonable man to a conviction of the truth of the charge. These expressions, however, have been interpreted to mean only that there must be a preponderance of the evidence sufficient to overcome the presumption of innocence of moral turpitude or crime and, while the evidence must be clear and convincing, such clear and convincing proof may be met by a preponderance of the evidence." Id., section 114, pp. 426–430. Another case relied upon for the proposition that proof under section 523(a)(2) must be proven by clear and convincing evidence is *In re Ashley,* 5 B.R. 262, 2 C.B.C.2d 949, 955 (Bkrtcy.E.D.Tenn.1980). But some of the precedential effect of that decision is diminished by the fact that it cited only *Sweet v. Ritter Finance Company, supra,* as sole authority for the proposition that fraud "must be proved by clear, cogent and convincing evidence" when the standard applied in that case was, as observed above, a "preponderance of the evidence." The Collier hornbook also relies upon *Dominion National Bank v. Netherland,* 8 B.R. 679, 3 C.B.C.2d 687 (Bkrtcy.W.D.Va.1981). The chief authority which, in turn, is relied upon in that decision is *Michie's Jurisprudence,* Section 56, *Fraud and Deceit,* where it is said, *inter alia,* that "where fraud is charged and denied, and the evidence as to the alleged false representations is conflicting, such false representations will not be considered as established unless they are clearly shown by a *preponderance of the evidence.*" (Emphasis added.) Otherwise, the authorities cited in that case and in *Brown v. Buchanan,* 419 F.Supp. 199, 202 (E.D. Va.1975), are not those which pertain to the type of fraud described in section 523(a)(2) and its predecessor statutes. The Collier authority finally relies upon cases which hold that the bankruptcy court has authority, under certain circumstances, not to be bound by a state court determination or even the evidence adduced by the parties in an action before it in making the dischargeability determination. See *Matter of Shuler,* 722 F.2d 1253 (5th Cir.1984); *In re Leach,* 35 B.R. 100, 9 C.B.C.2d 1090 (Bkrtcy.W. D.Ky.1983). But the literal text of those decisions does not support application of the "clear and convincing evidence" standard. Nevertheless, in the action at bar, this court has applied

tion of his intent to pay or perform. "A mere promise to be executed in the future is not sufficient to make a debt non-dischargeable, even though there is no excuse for the subsequent breach. A misrepresentation by the bankrupt of his intention, however, may constitute a false representation within the exception." 1A Collier on Bankruptcy para. 17.16, pp. 1638, 1639 (14th ed. 1976). Nevertheless, the credible evidence in the action at bar meets these difficult tests and clearly shows that the defendant James A. Curl did not intend to pay for the cattle at the time that he contracted with plaintiff to do so. The defendant denies such an absence of intention and that he misrepresented his intention. It is well established, however, that the element of intention is seldom provable by direct judicial admission of the defendant and ordinarily must be shown by circumstantial evidence.[7] In this action, the circumstantial evidence shows that the defendant was an experienced cattle trader; that he knew, or should have known, of the plaintiff's relative inexperience in such matters; that this should have been evident, if from nothing else, from the deal which he made with her, which he admits never to having been able to do in all his previous years of cattle dealing; that an absence of intention to pay is accordingly evidenced by his attempting to and effecting such a bargain by utilizing his superior ability and experience[8]; that an absence of intention to pay is further evidenced by the disposition of substantial portions of the cattle without any payment of the proceeds to plaintiff even though there had been an intervening promise to pay when disposition was made of the cattle;[9] that the defendant failed to make any reports to plaintiff of disposition or loss of the cattle even though more than half of the herd had to have been disposed of or lost[10]; and that, *according to the credible evidence, the defendant James A. Curl promised to pay according to the tenor of the postdated checks, and he did not have any intention to do so when he issued them.*[11] This court must therefore sustain the plaintiff's contention that the liability was created by fraud within the meaning of section 523(a)(2) of the Bankruptcy Code and the resulting indebtedness is therefore nondischargeable in bankruptcy.

The evidence further shows the agreement to have been for defendant to pay $50

the "clear and convincing evidence" standard to ensure against any possible error in this regard. When the defendant admits that he did not intend to pay in accordance with the tenor of the postdated checks that he issued, the evidence almost certainly meets this standard. It is true that the defendant states that he understood the agreement to be altered or changed to provide for payment only when he sold a certain portion of the cattle. But his testimony in this regard is not credible. And, even if it were, the evidence tends to support a finding that he did not pay even when he had sold some of the cattle.

7. "Fraud, being difficult to establish by direct proof, may also be shown by circumstantial evidence." *Barnard v. Barnard,* 568 S.W.2d 567, 570 (Mo.App.1978).

8. "The fact that one in whom confidence is reposed by another obtains an apparent advantage over the latter in a transaction between them is a vital factor in raising the presumption of fraud on the part of a fiduciary or one in confidential relationship. Moreover, the unfairness of a transaction or the inadequacy of con-

sideration is in itself a factor from which fraud can be inferred, and such inference will operate along with other evidence to support a finding of fraud." 37 Am.Jur.2d *Fraud and Deceit* section 440, p. 601 (2d ed. 1968). A "fiduciary or confidential relation" is "not confined to the dealings and transactions between parties standing in these relations, but extends to all relations in which confidence is reposed, and in which dominion and influence resulting from such confidence may be exercised by one person over another." Id. at section 16, p. 40. But even in the absence of such a relation, the evidence clearly and convincingly shows that the defendant James A. Curl did not intend to pay in accordance with the tenor of the postdated checks which he issued. See note 6, *supra.*

9. According to the evidence, at least half of the herd disappeared over the period of time in which they were in the custody of the defendant James A. Curl and there is no sufficient accounting in terms of death or other loss for such numbers.

10. See note 9, *supra.*

11. See note 6, *supra.*

per head for 330 head of cattle—a total of $16,500. The amount is reduced by $8,000, the amount received to date by the plaintiff on liquidation of the remainder of the cattle herd. The judgment underlying the decree of nondischargeability must therefore be $8,500, which may be further reduced by future proceeds of any cattle sales.[12] As to the other elements of damages which are sought, it is not demonstrated that they are attributable to the fraud which is shown by the evidence.[13]

It is accordingly, for the foregoing reasons,

ORDERED, ADJUDGED, AND DECREED that the indebtedness of the defendant James A. Curl to the plaintiff in the sum of $8,500 be, and it is hereby, declared to be nondischargeable in bankruptcy. It is further, accordingly,

ORDERED AND ADJUDGED that the plaintiff have and recover the same sum of $8,500 from the defendant James A. Curl. And it is further

ORDERED AND ADJUDGED that the within complaint as to the defendant Cathy J. Curl be, and it is hereby, dismissed for failure to make a submissible case.

---

**12.** See note 3, *supra.* Credit for any future sales may be credited against the indebtedness as a matter of payment against the judgment.

**13.** Such evidence as fraud as has been adduced has been directed solely toward demonstrating the intention of the defendant not to pay according to the agreement to purchase cattle. No evidence with respect to the other agreements—to rent pasture and to board the cattle— has been demonstrated. And it cannot reasonably be argued that the fraud as to the principal contract necessarily implies fraud as to the others. For it may be consistent with one's intent to defraud on the contract to pay for the cattle that he nevertheless do all things—or intend to do all things—which would keep and preserve the cattle healthy for his own use and benefit.