**In the Matter of John Joseph ULIASZ and Betty Eleanor Uliasz, f/d/b/a the Hoagie Hut, Debtor(s).**

**Ethel Studley LYTEL, Plaintiff,**

v.

**John Joseph ULIASZ and Betty Eleanor Uliasz, f/d/b/a the Hoagie Hut, Defendants.**

**Bankruptcy No. 85–669.**
**Adv. No. 85–201.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 6, 1987.

D. Turner Matthews, Bradenton, Fla., for plaintiff.

Raymond C. Farfante, Tampa, Fla., for defendants.

## MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a contested discharge proceeding, and the matter under consideration is the dischargeability vel non of a debt admittedly due and owing to the Plaintiff, Ethel Studley Lytel (Mrs. Lytel), by the Defendants, John Joseph Uliasz and Betty Eleanor Uliasz, formerly doing business as The Hoagie Hut, the Debtors involved in this Chapter 7 case. The Complaint filed by Mrs. Lytel seeks a declaration of this Court that the Defendants obtained properties, to wit, all the business assets of The Hoagie Hut, by actual fraud and, therefore, the debt owed by the Defendants shall be declared to be nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code. The record as established at the final evidentiary hearing reveals the following facts relevant and germane to a resolution of the issues raised by the Amended Complaint and the Answer filed by the Defendants:

At the time relevant to the matter under consideration, Mrs. Lytel was the sole proprietor of a sandwich shop operated as The Hoagie Hut located in Bradenton, Florida. John Joseph Uliasz (Uliasz) one of the Defendants, was a customer of the sandwich shop, and sometime in late November or early December approached Mrs. Lytel and indicated his interest in purchasing the restaurant. Sometime in early December Mrs. Lytel agreed to sell the restaurant for a total purchase price of $45,000.00, but required a $10,000.00 down payment and the balance of the purchase price was to be paid in equal monthly installments in the amount of $400.00 until the purchase price was paid in full. It is without dispute that Uliasz did not have the cash required for the down payment and Mrs. Lytel was aware of that fact.

What transpired in December is in conflict, and the conflict centers around the document, Exhibit Number 1, which is dated December 2, 1982, entitled "Sales Agreement, Bill of Sale". This document admittedly prepared by Uliasz purports to convey all business assets of The Hoagie Hut owned by Mrs. Lytel, at that time known as Studley, to John J. Uliasz, Jr. The document is admittedly signed by Uliasz, but Mrs. Lytel denies that the signature on the document is hers and claims that the signature was forged. There is no testimony in this record to indicate that she did, in fact, sign this document, and Uliasz was unable to explain how this particular document got into the records of the Exchange Bank, the bank which ultimately loaned the monies to Uliasz which in turn enabled him to make the down payment on the transaction. This document is also allegedly witnessed by Betty E. Uliasz and one Barbara Coli, and while Uliasz claimed that the signature is not his wife's signature, his wife, who was present at the trial, did not take the stand and testify and deny that the signature was hers. There is no doubt whatsoever, however, that Mrs. Lytel had absolutely nothing to do with the preparation of this document, and this Court is satisfied that her signature was, in fact, forged on the document and was not her signature.

This Court is equally satisfied that Uliasz asked Mrs. Lytel to sign the bill of sale in December, but she refused to do so until she received the down payment. And while Uliasz testified that he was authorized by Mrs. Lytel to represent that he, in fact, owned the restaurant and such authorization was conveyed to the bank in a telephone conversation, this Court is satisfied that this is not really what occurred and that Mrs. Lytel never had any conversation with any officer of the bank, including the officer of the bank who ultimately granted the loan. This fact is supported by the loan officer of the bank who testified and confirmed the fact that he never had any conversation with Mrs. Lytel. On December 31 Uliasz came into the restaurant requesting an opportunity to learn about the operation of the restaurant prior to closing, and Mrs. Lytel agreed on the condition that he pay $200.00 as earnest money, which Uliasz, in fact, paid by check dated January 3, 1986. (Deft's Exh. No. 1) Although it is not clear from the record, it appears that Uliasz submitted a loan application to the Exchange Bank for a commercial loan and in conjunction with the same also submitted to the bank the sales agreement dated December 2, 1982. (Pl's. Exh. No. 1) and a profit and loss statement of December 15, 1982. This profit and loss statement admittedly was prepared by the Defendant, Uliasz, and although it carries the signature of Mrs. Lytel, the signature is identical to the signature with the forged signature on the sales agreement dated December 2, 1982, and it is reasonable to infer that her signature on this document was equally forged. This profit and loss statement stated annual gross receipts of The Hoagie Hut to have been $91,000.00, which according to Mrs. Lytel was a grossly inflated figure inasmuch as she never grossed more than $56,000.00 over the years she owned and operated the restaurant. While Uliasz is unable to explain how these documents got to the bank, there is hardly any doubt that they were furnished to the bank by Uliasz in conjunc-

tion with his loan application. The loan application submitted by Uliasz states inter alia that he is the owner of the restaurant known as The Hoagie Hut; that he requested the loan for renovations and the purchase of additional equipment for the restaurant. The loan was granted by the bank, who requested and obtained a security agreement encumbering all the equipment, machinery, furniture, and fixtures now owned and hereafter acquired and also a financing statement (UCC–1 form) which granted a security interest to the bank in the fixtures and equipment located on the premises. In due course the bank perfected the security interest by proper recordation of the financing statement.

The loan closing with the bank occurred on the 5th, the date on which Uliasz executed the security agreement and the financing statement. On the following day on the 6th, Uliasz having obtained the monies necessary to make the down payment arranged for the closing for the purchase of the restaurant, which occurred on the 6th, even though the document prepared by Uliasz was dated January 5, 1983. This sales agreement described the purchasers as John J. and Betty E. Uliasz and identified the sellers as Ethel Studley, now known as Mrs. Lytel, and conveyed to Mr. & Mrs. Uliasz all interests and rights of ownership in The Hoagie Hut restaurant for the total purchase price of $45,000.00, with a down payment of $10,200.00, leaving a remaining balance of $34,800.00. The unpaid portion of the purchase price was to carry a four percent annual interest rate representing a total interest accruing during the life of the contract of $9,288.00.

While Uliasz denies that the closing occurred on the 6th, this Court is satisfied that the closing did, in fact, occur on the 6th or the day after Uliasz obtained the loan from the bank and pledged all the equipment in the restaurant as security for the loan even though on that date he had no cognizable ownership interest in the same. The denial of Uliasz as to the correct date of the closing is flatly contradicted by the sales agreement signed by him and his wife dated on the 6th which sales

agreement was properly witnessed and notarized by Lillian R. Long, notary public. (Pl's Exh. No. 2). There is no evidence in this record that Uliasz at any time informed Mrs. Lytel that he granted the security interest to the bank and all the equipment either prior to the closing of the sale nor thereafter, and there is evidence in this record which this Court accepts as true that had Mrs. Lytel known that all the equipment is encumbered in favor of the bank, she would not have sold the restaurant on deferred payment terms. It is admitted that in addition to the original down payment of $10,200.00 Uliasz made the monthly payment of $400.00 for 15 and one half months for a total of $6,000.00, and the balance of the purchase price agreed upon still remains unpaid.

This portion of the obligation is sought to be declared to be nondischargeable by Mrs. Lytel. There is nothing in this record to indicate that Mrs. Uliasz was in any respect involved in these transactions and was only involved in transactions to the extent she did sign some documents.

The claim of dischargeability is based on § 523(a)(2)(A) of the Bankruptcy Code, which in pertinent part provides as follows:

§ 523. Exceptions to Discharge

(a) A discharge under § 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt ...

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretense, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

■ In order to sustain a claim of nondischargeability of a debt under this section, it is clear that the burden is on the Plaintiff to establish that the debtor obtained money or property either by false pretenses, false representations, or by actual fraud. Thus, it is the Plaintiff's burden to show by competent evidence that the Defendant committed the fraud with the specific intention to deceive and that the

creditor as a result sustained the alleged loss and damage. *Newmark v. National Bank of North America (In re Newmark),* 20 B.R. 842 (Bankr.E.D.N.Y.1982); *Public Finance Corp. v. Taylor (In re Taylor),* 514 F.2d 1370 (9th Cir.1975); *Sweet v. Ritter Finance Co. (In re Sweet),* 263 F.Supp. 540 (W.D.Va.1967).

█ While it is true that as a general rule courts narrowly construe exceptions to the discharge against a creditor and the discharge provisions in favor of the debtor, *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), it is clear that when the evidence supports a conduct which is fraudulent, the intent to deceive is implicit in the fraud and requires no separate proof to establish the same. The difficulty with this case is that at first blush it appears that if anyone was defrauded, it was the bank, who on the reliance of a statement submitted by Uliasz that he is, in fact, the owner of the fixtures and equipment in The Hoagie Hut, lent the money to Uliasz which statement was clearly false at the time it was made to the bank, that is when Uliasz submitted his loan application. The difficulty in this case, however, is that the claim of nondischargeability is not asserted by the bank, but is asserted by Mrs. Lytel. Counsel for Uliasz places great emphasis on the fact that there is no evidence in this record that he made any false statements or misrepresentations concerning his financial conditions to Mrs. Lytel, and therefore, so contends counsel for Uliasz, she cannot prevail as a matter of law.

The proposition urged by counsel for the Defendant is an oversimplification and bears no close analysis. The gravemen of the charge is not that Uliasz made a false statement or misrepresentation to Mrs. Lytel concerning his financial condition, but that he committed a fraud when he falsely represented to the bank that he was, in fact, owner of the restaurant, that he forged Mrs. Lytel's signature on the bill of sale dated December 2 (Pl's Exh. No. 1) and on the profit and loss statement dated December 13 (Exhibit No. 2) and when he ultimately obtained a bill of sale on January 6, 1983, executed by Mrs. Lytel, he failed to disclose to Mrs. Lytel that the equipment was already pledged as security for the loan he obtained from the bank and that the proceeds of the loan were used to make the down payment on the purchase of the Hoagie Hut.

This being the case, this Court is satisfied that Uliasz did, in fact, obtain property by actual fraud and therefore, the debt owed by Uliasz to Mrs. Lytel, that is the balance still owed on the obligation, falls within the exceptive provisions of § 523 and shall be declared to be nondischargeable pursuant to § 523(a)(2)(A). Since, as noted earlier, there is no competent evidence in this record to establish any claim of nondischargeability against Mrs. Uliasz, the claim asserted against her shall be dismissed with prejudice. A separate final judgment will be entered in accordance with the foregoing.