**In the Matter of Donald Dwayne LARSON and Donna Gail Larson, Debtors.**

**Donald Dwyane LARSON and Donna Gail Larson, Plaintiffs,**

**v.**

**Jerome NORRIS, Defendant.**

**Bankruptcy No. 85–04178–3.**

**Adv. No. 87–0155–3.**

United States Bankruptcy Court, W.D. Missouri, W.D.

July 24, 1987.

James H. Thompson, Jr., N. Kansas City, Mo., for plaintiffs.

Dale K. Irwin, Kansas City, Mo., for defendant.

1. In this action it is the defendant who seeks the decree of nondischargeability even though it

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE DECLARING THAT PLAINTIFF DONALD DWAYNE LARSON'S LIABILITY TO DEFENDANT IS NONDISCHARGEABLE IN BANKRUPTCY IN THE SUM OF $1,050.00 AND FINAL JUDGMENT THAT DEFENDANT HAVE AND RECOVER THE SAME SUM FROM PLAINTIFF DONALD DWAYNE LARSON**

DENNIS J. STEWART, Chief Judge.

This action, in which the defendant[1] seeks a decree of nondischargeability pursuant to § 523(a)(2) of the Bankruptcy Code of a liability allegedly based on fraud, came on before the bankruptcy court for hearing of its merits on July 13, 1987. The plaintiff Donald Dwayne Larson then appeared personally and by his counsel, James H. Thompson, Jr., Esquire. Defendant appeared personally and by counsel, Dale K. Irwin, Esquire. The evidence which was then adduced clearly and convincingly showed that the defendant Norris contracted to purchase a certain automobile from the plaintiff Donald Dwayne Larson, to wit: a 1982 Toyota Corolla, V.I.N. JT2TE72D600200644. Pursuant to this contract, the defendant Norris was granted possession of the automobile and commenced to make monthly payments of $100.00 each. Over the months which followed, the defendant made a total of $1050.00 in payments. But the plaintiff Donald Dwayne Larson never delivered any certificate of title to the defendant Norris. This was so even though the uncontradicted testimony of Jerome Norris was to the effect that he had frequently requested of Mr. Larson that the certificate of title be delivered to him. But Mr. Larson continually refused to honor these requests. It was his testimonial statement that he did not consider the sale to Mr. Norris complete when custody of the automobile was given over to Mr. Norris and Mr. Norris commenced payments. It appeared to be Mr. Larson's contention that he considered the transaction to be one

was the plaintiff who filed the action for a determination of the dischargeability question.

whereby he merely loaned Mr. Norris the car while a determination was made which car on Mr. Larson's lot Mr. Norris should be permitted to purchase. He stated that Mr. Norris had accordingly agreed to continue to make such payments "if you can just keep me in transportation." Mr. Norris testified that Mr. Larson continually demanded timely payment according to the agreement, but also continued to refuse to deliver title. And, on at least one occasion, Mr. Larson substituted another automobile for the one originally given to Mr. Norris so that another potential customer might test drive it. In early 1987, just as Mr. Larson, according to his testimony in the trial of this action, had decided that Mr. Norris "needed to buy a cheaper car," Mr. Norris commenced an action in a Missouri state court to recover the monies paid by him to Mr. Larson on the grounds of common law fraud. On March 23, 1987, the state court issued a judgment for Mr. Norris against Mr. Larson in the sum of $1,050.00 actual damages and $10,000.00 punitive damages. The files and records in this court show that the within petition for voluntary relief was filed on November 19, 1985; that the defendant Norris was not included in the schedules then filed with the court[2]; that the case was initially closed on October 29, 1986; and that the debtors initially sought to reopen this case on February 12, 1987, for the purpose of scheduling the indebtedness to Mr. Norris.

### Conclusions of Law

■ The governing statute, section 523(a)(2)(A) of the Bankruptcy Code, provides as follows:

"A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

According to the case decisions construing that statute, a creditor seeking a decree of nondischargeability under the statute must prove each and every element therein defined by "clear and convincing evidence," which some of the authorities equate with a "preponderance of the evidence." *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967); *Matter of Curl*, 49 B.R. 302, 305, n. 6 (Bkrtcy.W.D.Mo.1985).

Whichever standard is applicable, the facts which are found above provide a sufficient basis for a decree of nondischargeability. They clearly and convincingly show that the plaintiff Donald Dwayne Larson purported to sell the automobile in question to Mr. Norris when he did not intend to do so; that, pursuant to that intention, he refused to deliver any certificate of title, although often requested to do so by Mr. Norris even as he exacted payment according to the oral agreement. Mr. Larson's action in promising to sell the automobile without intending to do so were knowing and fraudulent and, according to the facts found above, damaged Mr. Norris in the sum of $1,050.00. "A misrepresentation by the bankrupt of his intention, ... may constitute a false representation within the exception." 1A Collier on Bankruptcy ¶ 17.16, p. 1639 (14th ed. 1976). These considerations are especially applicable when Mr. Larson knew or should have known that § 301.210 RSMo. makes any

---

**2.** The files and records in this case show that debtors' liability to Norris was not scheduled in the initial schedules; that the trustee filed his report of no distribution on August 6, 1986; and that the discharge of the debtors was filed on October 22, 1986. The defendant Norris filed his state court action on October 14, 1986. There is no indication in the court files nor in the evidence that the defendant had any actual knowledge of the bankruptcy proceedings at the time of the filing. The first knowledge appears to have come shortly before March 11, 1987, when as the result of the debtors' attempts to reopen the bankruptcy case for the purpose of adding Mr. Norris to the schedule of creditors, Mr. Norris requested relief from the automatic stay in this court. Before the hearing could be held on that motion, the state court judgment was entered on March 20, 1987. This court ultimately denied relief from the automatic stay so that it could make the determination of dischargeability *vel non*, if necessary on the basis of the state court proceedings.

sale, or loan[3], of any automobile without delivery of title a fraudulent act upon which an action for civil damages may be predicated.[4]

■ The evidence which was adduced in this court, further, establishes clearly and convincingly that defendant is entitled to punitive damages under the state law. But, under the federal law of dischargeability of debts under § 523(a)(2), *supra,* punitive damages awards cannot be included within the ambit of nondischargeability. As has recently been pointed out in *Matter of Suter,* 59 B.R. 944, 946, 947 (Bkrtcy.N.D.Ill.1986):

"[Section] 523(a)(2)(A) precludes the dischargeability of a debt for money *only* to the extent the money was obtained by actual fraud. In this case, the debtor defrauded McCullough in the amount of $14,045.51. Because of the debtor's fraud, McCullough had to expend $7,141.14 in attorney's fees in an attempt to recover his actual damages. The treble damages awarded by the District Court under RICO are punitive in nature and in no way alter the extent of the damages for money obtained by actual fraud. The trebling of McCullough's damages did not increase the amount of money which the debtor obtained from McCullough by actual fraud. That amount was and continues to be $14,045.51. It is possible to argue that the attorney's fees incurred by the debtor in obtaining the prebankruptcy judgment also represent a debt

for money obtained by the debtor's actual fraud, although that analysis is admittedly strained at best."

■ Separately and independently, accordingly, the court holds that the state court judgment forms a sufficient predicate for issuance of the decree of nondischargeability. That state court judgment contains an explicit finding that the award of damages is based upon the fraudulent conduct of the plaintiff Donald Dwayne Larson and, as found above, no evidence has been adduced in the hearing of this action to contradict that finding. Even Mr. Larson's own testimony that he intended the transaction to be one which he reserved the right to select a vehicle for Mr. Norris is consistent only with a finding of fraud.[5] The governing decisional authority approves the practice of making the nondischargeability decision on the basis of a state court record as supplemental by evidence adduced in the bankruptcy court. *In re Mountjoy,* 368 F.Supp. 1087, 1096 (W.D. Mo.1973). This is especially so when the material issue of fraud has been decided in the state court under standards identical to those which apply in the federal dischargeability determination. *Brown v. Felsen,* 442 U.S. 127, 140, n. 10, 99 S.Ct. 2205, 2213, n. 10, 60 L.Ed.2d 767 (1979); *Matter of Curl, supra.*

The plaintiff Donald Dwayne Larson complains that the state court judgment in this case was entered in violation of the

---

**3.** Section 301.210(4) RSMo. provides as follows: "It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be *fraudulent* and void." (Emphasis added.) It is true that the dischargeability statute applies only to actual, not constructive, fraud. "Courts have consistently held that in order ... to bar a discharge, the party alleging fraud must prove actual or positive fraud, not merely fraud implied by law." *In re Taylor,* 514 F.2d 1370, 1373 (9th Cir.1975). But the effect of the Missouri statute is to void any sale which is made without the delivery of a certifi-

cate of title, and the plaintiff Donald Larson is chargeable with knowledge of this fact. His knowing actions deprived the defendant of the title to the car even as the defendant was led to believe that he was paying for it.

**4.** "Ownership of the cars by [the would-be seller] compels reversal of the judgment which denied the replevin claim of the [would-be seller] for possession. The [would-be buyer], however, is entitled to an opportunity to assert whatever claim he may have by reason of furnishing the purchase money for the cars ..." *Executive Jet Management v. Scott,* 629 S.W.2d 598, 613 (Mo. App.1982).

**5.** The credible testimony is that of Mr. Norris, who states that Mr. Larson led him to believe that he was purchasing the vehicle which he wanted, the 1982 Toyota.

automatic stay. But the facts of this case do not support this contention.[6] For the reasons stated above, however, the punitive damage award cannot be regarded as non-dischargeable.

Accordingly, it is hereby, for the foregoing reasons,

ORDERED, ADJUDGED AND DECREED that the plaintiff Donald Dwayne Larson's liability to defendant in the sum of $1,050.00 is nondischargeable in bankruptcy. It is further

ORDERED, ADJUDGED AND DECREED that defendant have and recover the sum of $1,050.00 from plaintiff Donald Dwayne Larson.