**In re Walter B. and Catherine W. RAPER, Chapter 7 Debtors.**

**BEST REPAIR COMPANY, INC., Plaintiff,**

v.

**Walter B. RAPER, Defendant.**

**Bankruptcy No. 92–41679–T.**
**Adv. No. 92–4054.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Aug. 6, 1993.

Raymond C. Nugent, Kalfus & Nachman, P.C., Norfolk, VA, for plaintiff.

Richard W. Hudgins, Newport News, VA, for debtors/defendants.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

### Introduction

Trial under plaintiff's complaint to except debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) was held in Norfolk, Virginia, on July 30, 1993. At the conclusion of the plaintiff's evidence the court granted debtor's motion for an involuntary dismissal under Bankruptcy Rule 7041 (adopting Fed. R.Civ.P. 41(b)).

This memorandum supplements the court's findings and conclusions stated at trial.

### Facts

The debtor was the sole stockholder and president of a corporation, operating under the name Tidewater Boat Works (TBW), which was the prime contractor under a government contract to overhaul a work boat for the United States Maritime Administration. The plaintiff, Best Repair Company, Inc., (Best) was TBW's electrical subcontractor on the job. Under the subcontract, Best's principal task was to repair one of the boat's main electric motors. A main motor is connected to a drive shaft and turns a boat propeller.

In a "quotation sheet" submitted by Best to TBW as part of its bid for the subcontract, the work to be performed included the description, "# 2 main motor repairs—turnkey electrical." (Exhibit 2) The subcontract contained the following description of the work to be performed by Best:

> Disconnect, disassemble as required # 2 main motor to remove armatur [sic] and field poles for rewinding and repair. Check and clean commutator-end. Repair motor and return to manufactors [sic] specification.

(Exhibit 1)

The price for this part of Best's contract with TBW was $24,000.00.

Upon closer examination of the motor in its shop, Best discovered it to be in "worse condition" than anticipated and found that additional work it had not anticipated would be necessary to repair the motor. Best sent a condition report to TBW describing this additional work and advised TBW that it's extra charge would be $8,400.00. (Exhibit 3)

Subsequently, the debtor telephoned Mr. Newsome, Best's contracting estimator, and told him the additional work was part of the original contract, which must be performed by Best without extra payment. Although the estimator disagreed with debtor's position, he nevertheless agreed that Best would complete the subcontract under the original terms, including the unanticipated work reflected in the condition report.

After Best had completed all work under the subcontract and been paid, Newsome received word that TBW had submitted a change request to the government for the work in question and had been paid an additional sum under the prime contract. Best then submitted an invoice to TBW in the amount of $8,400.00, which TBW refused to pay. Best obtained through the Freedom of Information Act a copy of TBW's prime contract modification which revealed that the government had paid the company $12,400.00 for the repairs to the motor which had been reflected in Best's condition report and performed by Best. (Exhibit 4)

### Discussion And Conclusions

Best's complaint alleges debtor as officer of TBW committed fraud and seeks a nondischargeable judgment against debtor in the amount of $8,400.00 pursuant to 11 U.S.C. § 523(a)(2)(A). The debtor does not contest the rule of law that if he personally committed fraud, a nondischargeable judgment may be rendered against him notwithstanding he was acting on behalf of a corporation.

 Section 523(a)(2)(A) excepts from discharge a debt for money or services obtained by the debtor's "false pretenses, a false representation, or actual fraud ...". The plaintiff must prove fraud by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The elements of proof under § 523(a)(2)(A) may be summarized:

(1) That the debtor made misrepresentations,

(2) That at the time the debtor knew they were false,

(3) That the debtor made them with the intention and purpose of deceiving the creditor,

(4) That the creditor relied on such representations, and

(5) That the creditor sustained loss and damage as the proximate result of the representations having been made.

*See, Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967).

The issue here is whether the plaintiff's evidence proved that debtor made representations which he knew to be false when made and with the intention of deceiving Best.

This case turns on representations made by debtor during one telephone conversation. It is not disputed, and the court has found as fact that when Best's contracting officer, Newsome, spoke by telephone to debtor concerning the unanticipated work necessary to repair the motor, that debtor maintained this work was required under the original contract and that Newsome agreed to Best's doing the work under the terms of the original subcontract. However, there were discrepancies between the testimony of Newsome and the debtor on other aspects of this conversation.

According to Newsome, debtor told him the government contracting surveyor on the job was giving debtor a "hard time" and insisting that the work in question was not an extra; debtor asked Newsome to do the work without extra charge and said debtor would make it up to Best on another job. Newsome stated that these representations by debtor caused him to agree to complete the job under the original subcontract without demanding extra payment.

Debtor testified that he did not recall the conversation as related by Newsome. He said he had insisted all along that the work in issue was required under the original contract, and Newsome had agreed to do the work.

The most disturbing evidence here is that at some time after the just related conversation by which debtor convinced Newsome and Best to treat the work as within the contract, debtor was able to persuade the government to treat it as an extra and ob-

tained an additional payment to TBW for this work in the amount of $12,400.00. However, debtor did not advise Best of this fact. Debtor's explanation of this was to the effect that a prime contractor's profit is based upon the ability to negotiate the best prices between the owner and the subcontractors and that his obtaining the extra payment was not improper. At trial debtor continued to maintain that the unanticipated work in question was included within the original contract.[1]

Upon first impression this seems to be a close case. Certainly the debtor's underhanded business tactic in failing to advise Best of the additional payment to TBW reflects unfavorably upon him. However, if plaintiff is to prevail, it must prove that Best undertook to perform the work in question under the terms of the original contract as a result of debtor's fraudulent misrepresentations. This means that debtor must have committed fraud at that point in his dealings with Best—during his telephone conversation with Newsome.

The major weakness in plaintiff's case is that, absent expert testimony to the contrary, a plausible argument can be made that the so called extra work performed by Best was indeed included within the original "turnkey electrical" subcontract which required Best to "repair" the electric motor. It would be extremely difficult for plaintiff to prove that debtor's insistence that Best was obligated to do the work was a fraudulent misrepresentation.

Moreover, even if the court were to accept Newsome's version of the telephone conversation with debtor to the effect that debtor told him the government contract estimator was insisting the work was required under the original contract terms, there is not a shred of evidence that this was a false statement when made. In fact, the record here is devoid of any evidence concerning the negotiations between debtor and the government which resulted in the extra payment to TBW.

Accordingly, I have concluded upon the testimony at trial of debtor and Newsome that there is insufficient evidence to establish

that debtor made fraudulent misrepresentations to Newsome when he convinced Newsome to do the work without extra charge. The fact that debtor was later able to convince the government to authorize payment for the work as an extra to TBW's contract, while a factor to be considered in the overall context of the case, cannot in itself support a finding of fraud.

Thus, although debtor may have "put one over" on Best, I find that his conduct did not rise to the level of fraud sufficient to except Best's claim against him from discharge under § 523(a)(2)(A).

---

1. Debtor points to the fact that Best's bid described its work to be "turnkey electrical". Newsome asserted in testimony that the condition in issue constituted "hidden damage" of a mechanical nature.