In the Matter of Morton Leo HAZEN and Lillie Bell Hazen, Debtors.

FIRST NATIONAL MERCANTILE BANK AND TRUST COMPANY, Plaintiff,

v.

Morton Leo HAZEN and Lillie Bell Hazen, Defendants.

Thomas Lynn WILLIAMS, trustee in bankruptcy, Plaintiff,

v.

FIRST NATIONAL BANK & TRUST CO., Defendant.

PIONEER FINANCIAL SERVICES OF KANSAS CITY, INC., Plaintiff,

v.

Lillie Bell HAZEN, Defendant.

Bankruptcy No. 86–04041–SW–7. Adv. Nos. 86–0571–SW, 86–0598–SW and 86–0553–SW.

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

July 29, 1987.

---

6. See note 2, *supra*.

Barry Langsford, Spencer, Scott & Dwyer, Joplin, Mo., for First National Bank & Trust, Co., and First Mercantile Bank and Trust.

Robert Parrish, Joplin, Mo., for Pioneer Financial Services of Kansas City, Inc.

Thomas Lynn Williams, Roberts, Fleischaker & Scott, Joplin, Mo., trustee/plaintiff.

Charles M. Edwards, Joplin, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREES AND JUDGMENTS DENYING TRUSTEE'S COMPLAINT TO AVOID THE LIEN OF FIRST NATIONAL MERCANTILE BANK AND TRUST COMPANY; GRANTING FIRST NATIONAL MERCANTILE BANK AND TRUST COMPANY FOR RECLAMATION IN THE SUM OF $1,422.54; DECLARING THE INDEBTEDNESS OF LILLIE BELL HAZEN TO PIONEER FINANCIAL SERVICES OF K.C., INC., TO BE NONDISCHARGEABLE IN THE SUM OF $17,884.48 PLUS INTEREST AND ISSUING JUDGMENT FOR SAME; AND DENYING THE COMPLAINT OF FIRST NATIONAL MERCANTILE BANK AND TRUST COMPANY FOR THE DENIAL OF THE DEBTORS' DISCHARGES IN BANKRUPTCY

DENNIS J. STEWART, Chief Judge.

The above-styled adversary actions all have common issues of law or fact, even though they involve different parties. The substance of the respective claims for relief of the respective plaintiffs is set out in the paragraphs which follow.

*First National Mercantile Bank & Trust Company v. Morton Leo Hazen and Lillie Bell Hazen,* Adversary Action No. 86–0571–SW. The plaintiff in this action seeks denial of discharge under section 727

of the bankruptcy code and a decree of nondischargeability under section 523 of the bankruptcy code. In the first count of that action, it is alleged that the defendants made fraudulent transfers of their property, with actual intent to hinder, delay, and defraud creditors within the year next preceding the institution of the bankruptcy proceedings. It is explicitly alleged that the debtors sold the inventory of the Four State Bass Pro Shop, in which the plaintiff had a valid and perfected security interest, for the sum of $12,596.62 and a walk-in beer cooler and minnow tanks were transferred, which were subject to the plaintiff's security interest within the year next preceding bankruptcy. The second count of the same complaint seeks a decree of nondischargeability on the basis of willful and malicious conversion, within the meaning of section 523(a)(6) of the Bankruptcy Code, based on the same factual allegations.

*Williams, trustee, v. First National Mercantile Bank & Trust Company,* Adversary Action No. 86–0598–SW. The plaintiff trustee in bankruptcy seeks a determination of the validity and perfection of the defendant's alleged security interest in the shop inventory which was sold for the $12,596.62 proceeds mentioned above. It is his contention, as stated in the complaint in this action, that:

> "Said defendant, by its agents, waived its rights in the inventory, fixtures, equipment and proceeds of the Bass Pro Shop by agreement with the debtors when debtors pledged real estate and the defendant, either by mistake or design, failed to cancel the security agreement after debtors gave the defendant a lien on their real property; or
>
> "By the 'Agreement to Modify Note' executed November 25, 1985, and as either evidence of the agreement described in (the above paragraph) or as a new integrated agreement, the defendant agreed that its note would be secured solely by a real estate mortgage ..."

In the same action, the defendant First National Mercantile Bank and Trust Company counterclaimed for reclamation of the proceeds of the liquidation sale which are in the hands of the trustee.

*Pioneer Financial Services of K.C., Inc. v. Lillie Bell Hazen,* Adversary Action No. 86–0553–SW. The plaintiff seeks a decree of nondischargeability under the provisions of sections 523(a)(2) and 523(a)(6) of the bankruptcy code (fraud and willful and malicious conversion, respectively) on the basis of allegations that the defendant Lillie Bell Hazen assigned a note and deed of trust made to her by Pat and Darlene Kelly to Pioneer and that:

> "subsequent to the Defendant assigning to Plaintiff the note and deed of trust, Plaintiff learned that Defendant had previously assigned the above-described note and deed of trust to First National Mercantile Bank and Trust Company, a national banking association of Joplin, Jasper County, Missouri, a copy of said assignment of note and deed of trust dated May 23, 1984, being attached hereto ... and made a part hereof as if set out in full."

Hearings of the merits of the complaints were held jointly in Joplin, Missouri, on the dates of March 5, 1987, and March 31, 1987. The parties all appeared at these hearings by counsel and the debtors, in addition, appeared personally. The evidence which was then taken gives rise to the following findings of fact. The defendant debtors operated a retail business prior to bankruptcy in which they sold certain types of equipment to fishermen. The defendant Lillie Bell Hazen (sometimes known as Lillie Bell Vermillion) held a deed of trust on certain real property of Pat E. Kelly and R. Darlene Kelly. Underlying that security interest was a note from Pat E. Kelly and R. Darlene Kelly to the defendant Lillie Bell Hazen, dated September 3, 1982, in the principal sum of $50,000 plus interest at 12% per annum payable at the rate of $514.50 per month. On March 24, 1984, (when the principal balance due from Mr. and Mrs. Kelly approached the $50,000 initially due), the note and deed of trust were assigned by Ms. Hazen to the First National Mercantile Bank and Trust Company. At the time of this assignment, the defendants had a balance due to the assignee bank of some $86,000, some of which

this assignment was intended to secure. Later, on March 27, 1986, the same Lillie Bell Hazen purported to assign the same note and deed of trust to Pioneer Financial Services of K.C., Inc. At that time, there was still $49,247.65 due on the underlying note. Ms. Hazen received a loan of $17,-884.48 as consideration for this assignment. In connection with the assignment, Ms. Hagen executed a written statement to the effect that the note and deed of trust had not previously been assigned.

According to the testimony of James Edward Damm, a second vice president of the First National Mercantile Bank and Trust Company, the debtors, in October 1984, had a balance due to that bank of some $86,000, secured by a $40,000 interest in inventory and receivables, and a security interest in the $15,000 or so of personal property which had been liquidated as of the time of the hearing and was in the hands of the trustee. Sometime between October 1984 and the date of bankruptcy, First National Mercantile Bank and Trust Company foreclosed on the deed of trust which had been initially assigned by Lillie Bell Hazen to it. Some $46,000 was realized from the foreclosure sale. According to the uncontradicted evidence which was adduced in the hearings, all of the $46,000 was applied against the balance owed to First National Mercantile Bank and Trust Company and none of it went to Pioneer Financial Services of K.C. This appears to be corroborated by the testimony of James Edward Damm, a second vice president of the First National Mercantile Bank and Trust Co. to the effect that, as of the date of bankruptcy, September 15, 1986, the total amount owed the bank was $30,922.54. As of the dates of the hearings in these cases, it appeared that the personal property which had previously existed to secure that amount had all been liquidated to produce the $12,596.62 in proceeds which was being held by the trustee—and the trustee, as observed above, claims those proceeds on the grounds that the bank had "waived" its security interest in these proceeds and had elected to be secured by certain real property alone. And, in the hearing of March 5, 1987, it developed that there was additional security for the indebtedness to the First National Bank and Trust Co. in the form of a junior mortgage on certain real property owed by the debtors in the State of Oklahoma.

■ It was the value of this junior mortgage in the Oklahoma property which came to dominate each and all of the within claims for relief. The evidence which was adduced in the initial hearing of March 5, 1987, by means of the testimony of Lillie Bell Hazen, tended to show that there was an "equity" applicable to the junior mortgage of the First National Mercantile Bank and Trust Co., at least to the extent of $30,000. If the "equity" were shown to be at least, as a matter of fact, the sum of $30,922.54, the sum due the First National Mercantile Bank and Trust Co. as of the date of bankruptcy, the powers of the bankruptcy court might be properly exercised to compel the bank to satisfy its balance due from the Oklahoma property, thus leaving the $12,596.62 on hand with the trustee protected as being subject to the junior lien of the trustee in bankruptcy. If it were shown to be substantially more, then it may well have been sufficient to protect the junior interest of the Pioneer Financial Services of K.C., Inc., in the proceeds of the note and deed of trust of the Kellys. Thus, to the extent of the additional value, First National Mercantile Bank and Trust Company might have been compelled to restore *pro tanto* that additional value to Pioneer out of the proceeds of the sale of the note and deed of trust, and the damage claim underlying the nondischargeability claim of Pioneer might have been reduced or wiped out. "If a senior lienor has a lien that extends to and covers two funds or potential funds and if a junior lienor has recourse to any one of those funds to satisfy the debt due him, the senior lienor may be required to exhaust the fund available to him exclusively before proceeding against the fund that is also available to the junior lienor." *In re Jack Green's Fashions for Men Big and Tall, Inc.,* 597 F.2d 130, 132 (8th Cir.1979); *Matter of Clary House, Inc.,* 11 B.R. 462, 465 (Bkrtcy.W.D.Mo.1981).

In the hearing held on March 31, 1987, however, the evidence adduced by the debtors was to the effect that the value of the second mortgage interest of the First National Mercantile Bank and Trust Company in the Oklahoma property was *less* than $30,000.[1] The evidence adduced by and on behalf of the First National Mercantile Bank and Trust Company showed the second mortgagee's interest to be only $7,000. Accordingly, this court cannot resolve the issues joined by resort to the doctrine of marshalling of liens or assets as explicated in *In re Jack Green's Fashions for Men Big and Tall, Inc., supra,* and *Matter of Clary House, Inc., supra,* as might otherwise have been the case,[2] but rather must make findings of fact and conclusions of law on all of the issues in these several actions.[3] The court will begin with the claim of the trustee in bankruptcy to avoid the lien of First National Mercantile Bank and Trust Company.

### The trustee's claim to the $15,596.62 in his possession

█ In this regard, the trustee bases his claim on a modification of the initial security agreement between the First National Mercantile Bank and Trust Company and the debtors which was entered into on November 25, 1985. The letter of the modification agreement makes it clear that the principal purpose of the agreement was to modify the term of the note by extending it by a little over a year. But, in the body of the modification agreement, the following recitation is made concerning security:

"Said note is secured by: Re-filed real estate mortgage dated September 16, 1985, recorded in Book 492, page 203, Delaware County; recorded September 26, 1985, between Morton L. Hazen and Lillie B. Hazen and First National Mercantile Bank and Trust Company, Joplin, Missouri."

No mention is made of the security interest in the inventory and equipment which was sold to produce the $12,596.62 over which the issue is joined. The four corners of the modification agreement, however, make it clear that there was an intention to modify the agreement only to extend its term; that the above quoted statement concerning collateral was intended to be a recitation only and not in any way to modify the original agreement in this regard. This is made clear by the fact that the above-quoted recitation occurs above and before the statement in the modification to the effect that "it is mutually agreed," *inter alia,* that the term of the note should be extended, and that, otherwise, the original note "shall remain in full force and effect upon the same terms and conditions as expressed therein except as otherwise modified herein."

Further, in the event that there could be any ambiguity in the modification agreement, the credible testimony of Mr. Damm, who signed the modification agreement on behalf of First National Mercantile Bank and Trust Company, is that no surrender of rights as to the security interest in inventory or equipment or other personalty was intended. It is recognized that the testimony of the debtors is to the contrary, but, for reasons of appearance and demeanor of the respective witnesses, the court elects to credit the testimony of the witnesses presented by the First National Mercantile Bank and Trust Company to the effect that the parties did not intend to modify the

---

1. The defendant Lillie Bell Hazen then testified that the value of the Oklahoma property was $78,000. Other evidence without contradiction established that the first mortgage had a balance due of $48,500. The evidence of the First National Mercantile Bank and Trust Company to the effect that the property only had a value of $55,000 was not persuasive because it was hearsay.

2. If the "equity" applicable to the junior mortgage in the Oklahoma property had been $49,000 or higher, then the First National Mercantile Bank and Trust Company could have been fully satisfied from that property and could have paid $17,884.48 to Pioneer in protection of its junior lien without any diminution of its senior lien.

3. This is so even though the reclamation of the First National Mercantile Bank and Trust Company can only be partially granted, as is further observed in the below text of this memorandum.

initial agreement with respect to the security interest and what it included.

The trustee additionally appears to rely upon a decision of the Missouri Court of Appeals in *Charterbank Butler v. Central Cooperatives, Inc.*, 667 S.W.2d 463, 465 (Mo.App.1984), to the effect that, "where the mortgagee authorizes or gives consent to the mortgagor to sell the mortgaged property the mortgage lien thereon is discharged." In the action at bar, however, as observed above, there is no credible evidence that the First National Mercantile Bank and Trust Company ever consented to the sale of this property. This court must therefore deny the complaint of the trustee in Adversary Action No. 86–0598–SW to avoid the lien of the First National Mercantile Bank and Trust Company on the $15,596.62. Accordingly, the counterclaim of the First National Mercantile Bank and Trust Company in that action for reclamation must be granted.

*The nondischargeability claim of Pioneer Financial Services of K.C., Inc.*

■ As noted above, the facts which were clearly demonstrated by the evidence adduced in the course of the two hearings in these adversary actions show that Lillie Bell Hazen in fact purported to assign the Kelly note and deed of trust to Pioneer after she had initially assigned them to the First National Mercantile Bank and Trust Company. In so doing, she clearly represented to Pioneer that she had not previously assigned the note and deed of trust. The transfer and assignment of the deed of trust which she executed plainly provided that:

> "ASSIGNOR hereby covenants that it has executed no prior assignment or pledge thereof, that it has executed no release, discharge, satisfaction or cancellation of the said Deed of Trust; that it has executed no release of any portion of the security described in said Deed of Trust, and that it has executed no instrument of any kind affecting the Deed of Trust or the Note(s) of the liability of the maker or makers thereof."

She further went so far as to execute an affidavit that the assigned note was lost, when it was, in reality, in the hands of the first assignee, the First National Mercantile Bank and Trust Company. In her testimony, Ms. Hazen contended that she did not intentionally misrepresent any of these facts to Pioneer because she in good faith believed that there was an excess in value of the assigned property over and above that which was assigned to First National Mercantile Bank and Trust Company which would cover the $17,884.48 which she gained from Pioneer as a result of the assignment. But her testimony in this regard is not credible. The court bases its conclusion in this regard not only upon the appearance and demeanor of the witnesses on this issue, but also upon the facts that, at the time the assignment to Pioneer was made, the value of the inventory and equipment securing the $86,000 balance due to First National Mercantile Bank and Trust Company had declined considerably and, according to the schedules filed in this case, she at the time believed that the equity applicable to First National Mercantile Bank and Trust Company in the Oklahoma property was only $22,000. As the sale of the inventory and equipment held only three months later demonstrated, the value thereof had dropped to about $12,596.62. At the time of the assignment, then, of the note and deed of trust to Pioneer, the existing collateral may have conceivably covered $40,000 of the $86,000 balance. There was approximately $49,000 value in the note and deed of trust assigned, a value wholly insufficient to cover both the indebtedness to First National Mercantile Bank and Trust Company and Pioneer Financial Services of K.C., Inc. Further, the debtor Lillie Bell Hazen knew or should have known that it was a material fact that the Pioneer loan officers would wish to consider in determining whether to make the loan as to whether there had been any prior assignment. The evidence clearly shows that this materiality was brought to the attention of Lillie Bell Hazen by reason of the assignment form itself, which, as observed above, required her to aver that no prior assignment had been

made—an averment which she knowingly and falsely made.

In this regard, then, the credible evidence clearly and convincingly [4] shows that the plaintiff has met all the burden of proving the elements of nondischargeable misrepresentation under section 523(a)(2) of the Bankruptcy Code. According to the foregoing summary of the evidence, it shows that misrepresentations were made with knowledge that they were false; that they were intentionally made; that the creditor relied on the misrepresentation in extending the credit; and that loss and damage to the extent of $17,884.48 plus interest according to the note were suffered as a result. See *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967); *Matter of Curl*, 49 B.R. 302, 306 (Bkrtcy.W.D.Mo.1985). The court has therefore no alternative except to enter a nondischargeable judgment of $17,884.48 plus interest as required by the note.

*The objection of the First National Mercantile Bank and Trust Company to the debtors' discharges in bankruptcy*

■ That brings the court to the complaint of the First National Mercantile Bank and Trust Company to deny the debtors' discharges in bankruptcy. They state that the sale of the inventory and equipment which resulted in the proceeds of $12,596.62 in the hands of the trustee plus the disappearance of a walk-in beer cooler and minnow tanks were transfers or concealments of property within the year next preceding bankruptcy such as would bar discharge under the provisions of section 727(a)(2) of the Bankruptcy Code because they were with actual intent to hinder, delay, and defraud creditors. In this regard, they observe that the sales and other dispositions of property were made without notice to the First National Mercantile Bank and Trust Company, which has a security interest in it. The evidence which has been adduced to the court on this issue leaves room for great doubt as to whether there was any actual intent to hinder, delay and

defraud creditors in the disposition of the property. The debtors deny that there was any such intent. Further, it must be observed that the First National Mercantile Bank and Trust Company is not being appreciably harmed by the actions of the debtors, because, with the application of the doctrine of marshalling of assets, they should recover the full value of their security. And none of the evidence demonstrates in any convincing fashion that the debtors reaped any significant benefit from the disappearance of this security. Under such circumstances, the court will exercise its discretion, in any event, to deny the complaint objecting to discharge. Even if a basis for denying discharge were shown, it remains in the discretion of the bankruptcy court not to deny discharge. *Matter of Borron*, 29 B.R. 122, 128, n. 12 (Bkrtcy.W.D.Mo.1983). See also *In re Suttles*, 819 F.2d 764, 765 (7th Cir.1987), to the following effect:

"On appeal (the creditor) argues that once the bankruptcy court found a violation of section 727 ..., it had no discretion to grant a discharge to (debtor). We disagree with this proposition.

"The general rule is that the right to a discharge is left to the sound discretion of the bankruptcy court, *Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982), and that an appellate court will not interfere with the decision of a bankruptcy court to grant a discharge unless there is a 'gross abuse of discretion,' *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984). We hold that the district court was correct in concluding that the bankruptcy court was well within its discretion to grant (debtor) a discharge. See *Matter of Borron*, 29 B.R. 122, 128 (W.D.Mo.1983)."

The complaint objecting to discharge will therefore be denied.

*The degree to which the counterclaim for reclamation of First National Mercantile Bank and Trust Company is granted*

■ The court has above indicated that the reclamation counterclaim of the First

---

**4.** See *Matter of Curl*, 49 B.R. 302, 304, 305, 306, n. 6 (Bkrtcy.W.D.Mo.1985).

National Mercantile Bank and Trust Company in Adversary Action No. 86–0598–SW should be granted. But, due to the applicability of the doctrine of marshalling of assets, it need be granted only to a limited extent, for the trustee is a junior lienor in favor of whom the doctrine may be applied. *In re Jack Green's Fashions for Men Big and Tall, Inc., supra; Matter of Clary House, Inc., supra.* In the hearing of March 31, 1987, the testimony of the debtor Lillie Bell Hazen, if credited, would establish that the value of the interest of the First National Bank and Trust Company in the Oklahoma property is $29,500.00. The balance due the bank as of the date of bankruptcy, as observed above, was $30,-922.54. The difference is, therefore, all that needs to be reclaimed from the bankruptcy estate and the property therein into which the bank can trace its lien. The bank has not offered evidence on this issue of postbankruptcy interest or an attorney's fee which might be recovered. The court will therefore limit its recovery in reclamation to the sum of $1,422.54.

### Decree and Judgment

Therefore, for the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DE-CREED that the complaint of the trustee in bankruptcy to avoid the lien of the First National Mercantile Bank and Trust Company in the $15,596.62 proceeds of sale held by him be, and it is hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that the counterclaim of the First National Mercantile Bank and Trust Company for reclamation from these same proceeds be, and it is hereby, granted to the extent of $1,422.54. It is further

ORDERED, ADJUDGED AND DE-CREED that the indebtedness of Lillie Bell Hazen to Pioneer Financial Services of K.C., Inc., in the sum of $17,884.48 plus interest according to the note be, and it is hereby, declared to be nondischargeable in bankruptcy. It is further

ADJUDGED that Pioneer Financial Services of K.C., Inc., have and recover the same sum from the defendant Lillie Bell Hazen. And it is further

ORDERED, ADJUDGED AND DE-CREED that the objection of the First National Mercantile Bank and Trust Company to the discharges in bankruptcy of the debtors be, and it is hereby, denied.

ORDER DENYING DEFENDANT'S "MO-TION TO VACATE, ALTER OR AMEND JUDGMENT OF JULY 31, 1987, DENYING DISCHARGE OF IN-DEBTEDNESS OF LILLIE BELL HAZEN TO PIONEER FINANCIAL SERVICES OF KANSAS CITY, INC."

Formerly, this court, on July 31, 1987, issued its final decree declaring the indebtedness of the defendant Lillie Bell Hazen to plaintiff to be nondischargeable in bankruptcy under the provisions of Section 523(a)(2) of the Bankruptcy Code. It was the finding of the court that the defendant Lillie Bell Hazen assigned to the plaintiff a note and deed of trust in her favor from third parties after she had already assigned the same note and deed of trust previously to the First National Mercantile Bank and Trust Company; that, in so doing, she executed a written certificate to the effect that she had not previously assigned the same note and deed of trust; and that the misrepresentation thus made to the plaintiff, and relied on by it, resulted in damage when the first assignee, First National Mercantile Bank and Trust Company, foreclosed upon the real property and none of the proceeds derived from the foreclosure sale were payable to the plaintiff, but all were applied against the indebtedness owed to First National Mercantile Bank and Trust Company.

The defendant Lillie Bell Hazen has filed a "motion to vacate, alter or amend judgment of July 31, 1987, denying discharge of indebtedness of Lillie Bell Hazen to Pioneer Financial Services of Kansas City, Inc." It is the principal contention of the defendant in that motion that there is insufficient evidence of the intention of the defendant Lillie Bell Hazen to make any false representation to the plaintiff. In particular, in this regard, it is stated in the motion that:

"(T)here was no evidence presented at either hearing in this case which would tend to support a finding that statements made by Lillie Bell Hazen to Pioneer Financial Services, Inc. of Kansas City, Inc., including the Affidavit of Lost Note and Deed of Trust were made with intent to deceive. No evidence whatsoever was presented by Pioneer Financial Services of Kansas City, Inc. at the hearings and the evidence of Lillie Bell Hazen explaining why she signed the Affidavit of Lost Note was to the effect that she had suffered a house fire and believed the original Note might have been burned up or that the original Note was still in the possession of First National Mercantile Bank and Trust Company of Joplin, Missouri and that she called the Bank and was told by Bank employees that the promissory note and deed of trust were not in the Bank's possession. This evidence was uncontroverted.

"Further, the testimony of Defendant Lillie Bell Hazen was supported by the testimony of her husband Morton Hazen and the Debtors' bookkeeper Debbie Patterson that First National Mercantile Bank and Trust Company Officer James Damm had told Lillie Bell Hazen that the Kelly Note (the Note which Mrs. Hazen pledged to Pioneer Financial Services of Kansas City, Inc.) had been released by First National Mercantile Bank and Trust Company as security for the Bank's loans to Four–State Bass Pro Shop. Defendant Lillie Bell Hazen's actions after being informed of this release consistently demonstrated her good faith belief that she was again the sole owner of the Kelly Note."

The evidence was in conflict as to whether Mr. Damm told Lillie Bell Hazen that the assignment to the First National Mercantile Bank and Trust Company had been released. The trial court, in making its findings that Ms. Hazen knew or should have known that it had not been released, was entitled not to find the testimony credible which would have supported a finding that Ms. Hazen acted in good faith. "The deference owed by appellate courts to finders of fact is at its highest where the issue turns on the resolution of a direct conflict between live witnesses." *In re Windle*, 653 F.2d 328, 331 (8th Cir.1981). This court based its determination not to give credit to this testimony primarily on the appearance and demeanor of the witnesses. Further, Ms. Hazen testified that, in the alternative that she believed that she was assigning to Pioneer only a stream of payments which should have been left over after the debt to First National Mercantile Bank and Trust Company had been paid. But this was not reasonable, when the certificate which she signed representing to Pioneer that she had made no prior assignment was intended to convey the understanding that she had never previously assigned the note and deed of trust, without regard to whether it had ever been released. And the testimony of Mr. Damm, in denying that he ever told Ms. Hazen that the deed of trust assignment was released, is more credible than the other testimony on the issue. Finally, the degree to which there was other collateral to cover the indebtedness owed to First National Mercantile Bank and Trust Company fell so far short of covering that indebtedness—as this court found in the findings of fact and conclusions of law filed July 31, 1987—that Lillie Bell Hazen could not reasonably have believed that First National Mercantile Bank and Trust Company had released the assignment in order to rely solely on the other collateral.

Further, it must be mentioned that this court did not regard the false statement that the note and deed of trust had been lost as the material misrepresentation. It was the misrepresentation that the note and deed of trust had not been previously assigned which was the material statement detrimentally relied upon by the plaintiff. It was a false statement, which Lillie Bell Hazen well knew to be false and the facts and circumstances all point to a conclusion that she intended the plaintiff to rely upon that statement and that she had knowledge of its falsity.

Accordingly, it is hereby

ORDERED that the defendant's "motion to vacate, alter or amend judgment of July 31, 1987, denying discharge of indebted-

ness of Lillie Bell Hazen to Pioneer Financial Services of Kansas City, Inc." be, and it is hereby, denied.