### FIRST NATIONAL MERCANTILE BANK AND TRUST COMPANY, Appellant,

v.

### Morton Leo HAZEN and Lillie Bell Hazen, and Thomas L. Williams, Trustee in Bankruptcy, and Pioneer Financial Services of K.C., Inc., Appellees.

### No. 88–5025–CV–SW–1.

United States District Court,
W.D. Missouri,
Southwestern Division.

Sept. 30, 1988.

Barry R. Langford, Spencer, Scott & Dwyer, P.C., Joplin, Mo., for appellant.

Charles Edwards, Joplin, Mo., for debtors.

Robert R. Parrish, Joplin, Mo., for Pioneer Financial Services of K.C., Inc.

Thomas L. Williams, Roberts, Fleischaker & Williams, Joplin, Mo., trustee.

### ORDER

WHIPPLE, District Judge.

This matter is before the court on appeal from the bankruptcy court. The appellant bank appeals from the findings of fact and conclusions of law in the bankruptcy court's order of July 29, 1987. 79 B.R. 466. The appellee trustee has filed a cross-appeal. For the reasons set forth below, the findings and conclusions of the bankruptcy court will be affirmed.

### I. FACTS

Debtor Lillie Bell Hazen operated several businesses in the Joplin, Missouri, area for about twenty years. She periodically obtained financing by executing promissory notes and security agreements with various financial institutions. In March, 1987, debtors Lillie Bell Hazen and Morton Leo Hazen operated two businesses pertinent to this appeal, Lil's Cafe and Four States Bass Pro Shop. In October 1984, debtors met with a bank official to discuss increasing the bank's collateral position in their $86,000 debt to the bank. Debtors executed security interests in favor of the bank in the Bass Pro Shop's inventory, walk-in cooler and minnow tank. The value of the collateral secured in favor of the bank was about $40,000. Debtors then executed a second mortgage in favor of the bank on some Oklahoma real estate which they bought for $68,500. The first mortgage amount was about $48,000.

In May 1986, debtor Lillie Bell Hazen moved the Bass Pro Shop inventory to northeast Oklahoma, but did not tell her business creditors about the move. At an auction, she sold the inventory for $12,715.68 plus interest. (The proceeds currently are held by the appellee trustee in an interest-bearing account.) Meanwhile, debtor Lillie Bell Hazen transferred the walk-in cooler and minnow tank to another business creditor, again without notifying the bank of the transfer.

At the March 5, 1987, bankruptcy hearing, debtor Lillie Bell Hazen estimated the value of the Oklahoma real estate at $78,500. She stated the purchase price was $68,500. She also said the house had been completely remodeled; the lakefront wall was replaced with glass, new kitchen cupboards and new carpeting were installed, several walls were changed to open the living area more, and a two-car garage was built. She further said the first mortgage amount was about $40,000, so she estimated the equity available to the second-mortgage holder, the bank, was $38,500. She said the property had been listed with a realtor for sale at $84,500, but that it had not been sold.

At the March 31, 1987, hearing, an officer of the first-mortgage holder testified the first-mortgage amount was $48,500, so only $30,000 would be available to the second-mortgage holder at the value placed by the debtor. The parties stipulated to the admission of a letter from an appraiser, frequently used by the bank, who found the value to be $55,000.

As of the date of bankruptcy, September 15, 1986, debtors owed to the bank $30,922.54. The bankruptcy court apparently

adopted the debtor's opinion of the value of the Oklahoma property:

> The evidence which was adduced in the initial hearing on March 5, 1987, by means of the testimony of Lillie Bell Hazen, tended to show that there was an "equity" applicable to the junior mortgage of the First National Mercantile Bank and Trust Co., at least to the extent of $30,000. If the "equity" were shown to be at least, as a matter of fact, the sum of $30,922.54, the sum due the First National Mercantile Bank and Trust Co. as of the date of bankruptcy, the powers of the bankruptcy court might be properly exercised to compel the bank to satisfy its balance due from the Oklahoma property, thus leaving the $12,596.62 on hand with the trustee protected as being subject to the junior lien of the trustee in bankruptcy.

The bankruptcy court relied upon the doctrine of marshalling to compel the bank to satisfy its balance due from the Oklahoma property before seeking to collect from the $12,596.62 proceeds from the inventory, in which the bank had a secured interest. The bankruptcy court found that, in equity, the bank must look first to the Oklahoma property—in which the trustee has no interest—before exercising its senior right over the trustee to the inventory proceeds. The appellant bank asserts that it should be allowed to claim all of the inventory proceeds held by the trustee.

## II. DISCUSSION

Appellant's argument is twofold. First, it asserts the bankruptcy court improperly applied the doctrine of marshalling. Second, appellant argues that the bankruptcy court was clearly erroneous in finding that the debtors testified credibly in regard to the value of the Oklahoma real estate.

### A. *Doctrine of Marshalling*

A review of the doctrine of marshalling appears in *Matter of Clary House, Inc.,* 11 B.R. 462, 465 (Bankr.W.D.Mo.1981):

> The doctrine of marshalling of assets "is not bottomed on the law of contracts or liens. It is founded instead in equity, being designed to promote fair dealing and justice. Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all the parties." *Meyer v. United States,* 375 U.S. 233, 236 (84 S.Ct. 318, 320, 11 L.Ed.2d 293 (1963). "If a senior lienor has a lien that extends to and covers two funds or potential funds and if a junior lienor has recourse to any [sic, only] one of those funds to satisfy the debt due him, the senior lienor may be required to exhaust the fund available to him exclusively before proceeding against the fund that is also available to the junior lienor ... Federal courts of bankruptcy are courts of equity and may apply the doctrine of marshalling in proper cases." *In re Jack Green's Fashions for Men—Big and Tall, Inc.,* 597 F.2d 130, 132 (8th Cir.1979).

■ There are three elements to the traditional doctrine of marshalling: (1) The existence of two or more creditors, (2) the existence of two or more funds belonging to a common debtor, and (3) the right of the paramount creditor to satisfy its demand from more than one of the funds, while the junior creditor(s) may only resort to less than all of the same funds. *In re Vermont Toy Works, Inc.,* 82 B.R. 258, 313 (Bkrtcy. D.Vt.1987); *Matter of Multiple Services Industries, Inc.,* 18 B.R. 635, 636 (Bankr. E.D.Wis.1982).

■ The facts relevant to the doctrine here are simple. The appellant bank has security interests in two "funds." Those "funds" are (1) the second mortgage on the Oklahoma real estate and (2) the inventory sale proceeds, presently held by the trustee. There is a first mortgage, held by First Federal Savings and Loan, of Pittsburg, Kansas, but the trustee has no interest in, access to or claim upon the Oklahoma real estate. Therefore, the appellant bank is a junior lienor relative to First Federal, but the appellant bank is a senior lienor relative to the trustee, who has no lien at all on the real estate. Regarding

the inventory proceeds, the appellant bank has a position senior to the trustee because the bank had a security interest in the predicate inventory. Thus, the appellant bank has positions senior to the trustee in both "funds:" (1) the Oklahoma real estate and (2) the inventory proceeds.

Appellant argues that marshalling assets requires that a senior lienor must have two "funds" upon which to draw, but that here the appellant had a senior lien upon only one fund. That is, the appellant bank had a lien on the fund (inventory proceeds) held by the trustee, and that lien was senior to the trustee's claim, but had no senior lien on the Oklahoma real estate. The bankruptcy court viewed the bank's second mortgage on the Oklahoma real estate as another fund, to which the trustee had no access or claim. Finding the bank's lien, therefore, to be senior to the trustee, the bankruptcy court compelled the bank to satisfy its balance due first from the real property before looking to the fund held by the trustee. The bankruptcy court found, as a matter of fact, that the value of the bank's second mortgage interest in the Oklahoma property was $29,500, and ordered only the remaining balance due ($1,422.54) to be satisfied by the fund held by the trustee. The appellant argues that, as a second mortgage, the lien was junior to the first mortgage and, therefore, the bank was not a senior lienor on two funds.

The error in appellant's characterization is clear upon examination of the purpose of the doctrine. As quoted above, the Supreme Court held in *Meyer v. United States, supra,* at 236, that marshalling is designed to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor. In this instance, the appellant bank might elect arbitrarily to try to satisfy its balance due, $30,922.54, from the proceeds of the inventory liquidation, $12,596.62. The bank then would look to the Oklahoma real estate to satisfy the remaining $18,325.92.

If the equity in the real estate were more than enough to satisfy both the first mortgage and $18,325.92 on the second mortgage, the remaining equity would exceed the value of the bank's security interest. If the equity in the real estate were not enough to satisfy the first mortgage and all of the balance due to the appellant bank, the bank still would be able to exercise its senior lien on the fund held by the trustee. The bank, of course, would be limited to the value of its security interest. The excess, if any, would remain with the trustee to satisfy unsecured creditors.

The same result occurred with virtually identical circumstances in *Matter of Multiple Services Industries, Inc., supra,* at 636. In that case, a creditor bank which held a second mortgage objected to marshaling, asserting that insufficient value would be left after the first mortgage to satisfy its claim and that considerable expense and delay would be incurred in foreclosure. The court compelled the creditor bank to foreclose on the second mortgage before the bank could seek satisfaction from the trustee's account. The trustee was required to maintain sufficient funds in the account to pay the bank's unsatisfied claim after foreclosure. *Id.* at 637.

Without marshalling assets here, the bank could arbitrarily exercise senior rights over the inventory proceeds first (rather than the real estate) and thereby deprive the trustee of money it would have if the bank had tried to satisfy its balance from the real estate. Indeed, as the bankruptcy court noted, if the bank could satisfy its entire balance from the real estate, the trustee would retain the entire proceeds from the inventory. However, that could occur only if the bank chooses to foreclose on the real estate before reaching into the inventory proceeds. The trustee has no such option. Unlike the bank, the trustee cannot choose between the mortgaged real estate and the inventory proceeds. The crux of the doctrine of marshalling is that, where one party has a choice of funds, the party cannot arbitrarily deprive another party merely be exercising senior rights against that party. Rather, the doctrine provides that the party with more than one available fund must look first to the fund which would not unnecessarily deprive a junior lienor of val-

ue which the junior lienor otherwise would have.

The appellant bank seeks to impose unreasonably restrictive definitions on the words "senior lienor" and "exclusively" as they appear in a description of marshalling:

> If a senior lienor has a lien that extends to and covers two funds or potential funds, and if a junior lienor has recourse to only one of those funds to satisfy the debt due to him, the senior lienor may be required to exhaust the fund available to him exclusively before proceeding against the fund that is also available to the junior lienor. *Meyer v. United States,* 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963).

*In re Jack Green's Fashions for Men—Big and Tall, Inc., supra,* at 132–33. Appellant suggests that, because its interest in the real estate is junior to the first mortgagee, the appellant bank cannot be considered a "senior lienor." Further, appellant suggests that, because the first mortgagee has an interest in the real estate, the proceeds from the real estate is not available "exclusively" to the bank.

Common sense, equity, tradition, and the purpose of the doctrine demonstrate that appellant's interpretation of the terms is incorrect. The term "senior lienor" refers to the relationship between the two parties in question. In this instance, the bank is a senior lienor in the real estate, as compared to the trustee, because the trustee has no interest at all in the real estate. It is irrelevant that the bank is a junior lienor relative to some third party, i.e., the first mortgagee. Furthermore, the real estate proceeds are available "exclusively" to the bank by comparison to the trustee, regardless of whether any third party has a senior interest, i.e., the first mortgagee.

The facts here fit neatly within the elements of the doctrine of marshalling, as set forth above: (1) There are two or more creditors (bank and trustee), (2) there are two or more funds belonging to a common debtor (second mortgage and inventory proceeds), and (3) the right of the paramount creditor (bank) to satisfy its demands from more than one of the funds, while the junior creditor (trustee) may only resort to less than all of the same funds. *See, In re Vermont Toy Works, Inc., supra,* at 313.

### B. *Findings of Fact*

Appellant further argues that the bankruptcy court's reliance upon debtors' valuation of the Oklahoma property, rather than upon the bank-employed appraiser's valuation, was clearly erroneous. Bankruptcy Rule 810 requires a reviewing court to accept the factual findings of a bankruptcy judge unless they are "clearly erroneous." As the Supreme Court stated in *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." A reviewing court oversteps the bounds of its authority if it undertakes to duplicate the role of the lower court. *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518, 528 (1985). It is not the function of appellate courts to decide factual issues de novo. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576–77, 23 L.Ed.2d 129 (1969).

Certainly it is disturbing to see that debtor Lillie Bell Hazen apparently moved and liquidated the minnow tank, walk-in cooler, and inventory without notifying the creditors who had a security interest in those items. There also was evidence that she assigned to a lending institution a promissory note and deed of trust which she held on some other real property, and that she represented they had not been assigned previously when in fact they had been assigned previously.

Nevertheless, her undisputed testimony was that the Oklahoma property had been bought for $68,500 and had been improved and remodeled; the lake-front wall had been replaced with glass, new kitchen cupboards and new carpeting were installed, walls were moved to open the living area, and a two-car garage was constructed. The property, though not sold, was listed at

$84,500. The dispute arose over her valuation of the property at $78,500. Appellant bank's appraiser put the value at $55,000.

Although one might have some reservations of the credibility of the debtor, her testimony provides a substantial basis for making a finding of fact. As stated above, unless there is a definite and firm conviction that a mistake has been made, the bankruptcy court's finding will not be disturbed. This court cannot see a sufficient showing of a mistake to permit second-guessing the judge who was present to receive the evidence personally.

It is

ORDERED that the decision of the bankruptcy court is affirmed.