**STATE of Missouri ex rel. Alan L. LIEBERMAN and Harold G. Lieberman, Relators,**

v.

**The Honorable Steven GOLDMAN, Respondent.**

**No. 57325.**

Missouri Court of Appeals, Eastern District, Writ Division Six.

Dec. 12, 1989.

Thomas Michael Blumenthal, Susman, Schermer, Rimmel & Shifrin, and Thomas R. Schlesinger, Clayton, for relators.

Martin M. Green and Todd H. Iveson, Green, Kanefield, Hoffman & Dankenbring, Clayton, for respondent.

SIMEONE, Senior Judge.

This is an original proceeding in prohibition brought by relators Alan L. Lieberman and Harold G. Lieberman to prohibit The Honorable Steven Goldman from enforcing his order denying them, as defendants in the underlying action, the privilege of asserting any affirmative defenses or utilizing discovery procedures because relators asserted their privilege against self-incrimination. We have jurisdiction. Mo. Const., Art. V., § 4; Rule 97. We issued our preliminary order on September 27, 1989. Our preliminary order is now quashed in part and made permanent in part.

This proceeding arises from an underlying action filed on February 23, 1989 by Robert A. Rosenthal against Lieberman Corporation, Lieberman Management Company, Creve Coeur Development Company, and Alan L. Lieberman and Harold G. Lieberman in their personal capacities.

The petition alleged that the corporations are engaged in the business of promoting, developing and marketing condominiums, homes and apartments; that the corporations had interlocking directorates consisting of the relators; that relators are offi-

cers and directors, and that Creve Coeur Corporation was an insolvent shell corporation created for the sole purpose of insulating relators from liability.

The petition further alleged that on November 12, 1988, Rosenthal agreed to purchase from Creve Coeur a condominium in Carlyle, a subdivision in St. Louis County, for the price of $494,500. Rosenthal made a downpayment of $116,625. The petition charged that the defendants fraudulently induced Rosenthal to enter into the contract and alleged that the defendants made certain false representations including the representations that his deposit would be used solely to remove encumbrances and to construct a condominium, that construction would begin immediately and that defendants failed to disclose certain material matters all of which was a conspiracy to defraud Rosenthal.

Subsequently, on April 4, 1989, Rosenthal filed requests for discovery. Rosenthal requested the production of certain documents pursuant to Rule 58.01; and also filed interrogatories pursuant to Rule 57.01 upon the corporate and individual defendants. The defendants, relators, here, on May 24, 1989, filed their response to the request for production of documents and the interrogatories. Objections were made to many of the requests and interrogatories on the ground that the requests were overbroad, unduly burdensome and not reasonably calculated to lead to admissible evidence. In response, Rosenthal filed a motion to compel answers, and as a result, a hearing was held on June 22, 1989. At that hearing, counsel for relators indicated that, on advice of counsel, relators "plan to assert their right not to incriminate themselves on the 5th and 14th Amendments to the U.S. Constitution and under Article I Section 19 of the Missouri Constitution; with respect to the production of documents of a personal nature, and with respect to the answering of interrogatories that deal with them in a personal nature." On June 30, 1989, the court overruled certain of the objections to Rosenthal's discovery, but did not make a ruling on the assertion of the privilege against self-incrimination.

On July 31, 1989, relators filed their second response to the request for production of documents and the interrogatories. These responses answered some of the requests but, as to other responses, relators asserted that, on advice of counsel, they relied on the privilege against self-incrimination, and refused to answer those requests for production and interrogatories which may tend to incriminate them.[1]

Then on August 7, 1989, Rosenthal filed his motion to strike the answer to the petition and all other pleadings and requested the court to enter an order of default and inquiry. The motion averred that, since the responses alleging the privilege of self-incrimination were filed some four months after the requests for discovery, the "rationale" for refusing to provide discoverable information is without "basis in the law."

The motion alleged that with respect to the corporate defendants, there is no privilege, and with respect to the individual defendants, the law is "equally well-settled" that individual defendants "may not claim the privilege with respect to corporate documents." Rosenthal contended that relators' conduct displays a "contumacious and deliberate disregard" for the court's authority.

On September 19, 1989, the respondent ruled on Rosenthal's motion to strike relators' pleadings, and entered an order ordering the corporate and the individual defendants (relators) to answer certain of the

1. The relators did produce the by-laws of the corporate defendants, but refused to produce the minutes and resolutions of the shareholders, ledgers, canceled checks, financial statements, cash receipts, deposit books, sales contracts, correspondence, notes, security agreements, living or testamentary trusts, default or delinquency notices, vendor master lists and other documents. They refused to answer interrogatories relating to the dates of the meetings of the shareholders, their net worth, and information relating to living or testamentary trusts.

requests for documents[2] within twenty days and ordered the corporate defendants only to answer certain of the interrogatories. The order then stated:

> Where personal-individual defendants assert the privilege against self-incrimination with respect to interrogatory requests by plaintiff, said defendant [sic] will not be permitted to seek affirmative relief by cross or counterclaim and will not be permitted to assert affirmative defenses or utilize discovery procedures. Furthermore, said defendant [sic] will be precluded from controverting through his own records or testimony at trial evidence of plaintiff with respect to the issues raised by plaintiff's discovery requests to which the privilege is asserted. *State ex rel. Pulliam v. Swink,* 514 S.W.2d 559 (Mo. banc 1974).

The next day, September 20, 1989, relators filed their petition for a writ of prohibition in this court seeking to prohibit respondent from enforcing his order relating to denying them the right to assert affirmative defenses or utilizing discovery procedures. We issued our preliminary order, after receiving suggestions in opposition thereto, on September 27, 1989.

In their brief relators contend that: (1) respondent's order was an abuse of discretion and an impermissible attempt to impose a penalty upon relators for the exercise of their rights under the State and Federal Constitutions, (2) the order was an abuse of discretion because it included sanctions not authorized by the Rules.

The issue which must be resolved is whether the respondent exceeded his jurisdiction or abused his discretion in denying the defendants-relators permission to (a) seek any affirmative relief by cross-claim or counterclaim, (b) assert any affirmative defenses in defending Rosenthal's claim, and (c) utilize any discovery devices or discovery procedures under the Rules.

The privilege against self-incrimination is secured by Article I, § 19 of the Missouri Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. This privilege exists whether or not a criminal charge is pending, and may be asserted in a civil proceeding. *State ex rel. Flynn v. Schroeder,* 660 S.W.2d 435, 436 (Mo.App.1983). It may also be aserted in the discovery process. *See* Note, *Use of Privilege Against Self–Incrimination in Civil Litigation,* 52 Va. L.Rev. 322 (1966).

It is not crystal clear from the record whether the relators are the sole shareholders of the various corporations who are defendants, but it is alleged that they are officers, agents and servants of the corporations. The law is clear that the relator's individual status is different from that of the corporate defendants. Corporate defendants have no privilege against self-incrimination. *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (disapproved on other grounds in *Murphy v. Waterfront Comm. of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)); *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911) (officer of corporation cannot claim privilege to justify refusal to produce corporate records); *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *State ex rel. Falcone v. Levitt,* 572 S.W.2d 252, 254 (Mo.App.1978). In *Bellis,* it was held that the privilege is applicable only to an individual and that an individual cannot rely on the privilege to avoid producing

2. Relators, and the corporate defendants were ordered to produce the following documents: (1) all minutes and resolutions of the board of directors and committees, (2) cash disbursement journals, ledgers, cancelled checks and financial statements which show payments made by Creve Coeur to Community Federal, (3) all sale contracts between any corporate defendant and any purchaser at Carlyle, (4) all contracts, notes, security agreements of any corporate defendant to any savings and loan institution, (5) all default notices, (6) the vendor master list which would reflect the creditors, (7) periodic accounts payable reports, (8) job cost reports, and (9) cash receipt journals which would reflect the receipt by any corporate defendant of any payments from any financial institution.

records of an entity which are in his possession in a representative capacity even if those records might incriminate him personally. The privilege is limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records. Even a sole shareholder of a corporation may not rely upon the privilege to avoid personally producing records of his corporation. *See* cases collected in annot., 87 A.L.R.Fed. 178, 194 (1988).

■ When the privilege is lawfully asserted by individual defendants, the effect of such assertion has been resolved in a number of Missouri authorities. It has been clearly held in this state that where a party requesting affirmative relief invokes the privilege against self-incrimination, the court may strike the pleadings if the information sought is relevant and material and peculiarly within the knowledge of the party refusing to answer. The basis of the rule is to prevent a party from obtaining an advantage from invoking his Constitutional rights. *Hagenbuch v. Hagenbuch,* 730 S.W.2d 269, 271 (Mo.App.1987).

In *State ex rel. Pulliam v. Swink, supra,* our Supreme Court held that, when relator, an individual, asserted his privilege in a deposition, the court exceeded its jurisdiction by striking the defendant's answer containing no affirmative relief. The court further held that, when the privilege is asserted, the court may strike any affirmative relief sought. The affirmative relief test was held not to be unfair when the court precludes one who invokes the assistance of the courts to produce evidence within his knowledge, but it is "something else again to require one who is in court involuntarily to elect between his constitutional privilege and the automatic entry of a judgment against him." *Swink,* 514 S.W.2d at 561. The Court relied on *Geldback Transport, Inc. v. Delay,* 443 S.W.2d 120 (Mo.1969) (upholding the dismissal of a cross-claim where individual refused to answer interrogatories on self-incrimination grounds) and *Franklin v. Franklin,* 365 Mo. 442, 283 S.W.2d 483 (Mo. banc 1955) (upholding the striking of the pleadings of a plaintiff in a dissolution action where plaintiff refused to answer interrogatories because of the privilege.)[3] The *Swink* court pointed out that the relator was not contumacious, that he invoked his privilege immediately and in good faith, and was in court involuntarily. The Court did note, however, that once the privilege was invoked to preclude discovery, courts have the power not to allow defendant to change his position and testify at trial to his benefit, and invocation of the privilege at the discovery stage may well serve to preclude the defendant from controverting the evidence of the plaintiff at trial through his own testimony or records. *See also, Falcone, supra,* holding that it is improper to strike defendant's answer asserting no affirmative relief and prohibition against striking answer shall be conditioned upon producing corporate records as to which he has no privilege. *See* annot., 4 A.L.R.3d 545, 547 (1965); M. Kaminsky, *Preventing Unfair Use of the Privilege Against Self-Incrimination,* 39 Brook. L.Rev. 121, 143 (1972).

Whether the court exceeds its jurisdiction in striking an affirmative defense asserted by a defendant who asserts the privilege against self-incrimination was resolved in *State ex rel. Taylor v. Luten,* 710 S.W.2d 906 (Mo.App.1986). There, the respondent struck the answer of the defendant in a personal injury action which denied liability and asserted the affirmative defense of comparative fault. No counterclaim was filed. At a deposition, relator asserted her privilege against self-incrimination. This court held that the assertion of comparative negligence is more in the nature of a defense than a claim for affirm-

3. *Franklin v. Franklin, supra,* is criticized in 8 C. Wright and A. Miller, *Federal Practice and Procedure,* § 2018 at 147. These authors criticize the rule of striking pleadings when the privilege is asserted. *Id.,* at 148. *See also, Wehling v. Columbia Broadcasting System,* 608 F.2d 1084 (5th Cir.1979), *rehearing den.,* 611 F.2d 1026 (5th Cir.1980).

ative relief and found that relator was entitled to assert her constitutional privilege, so that the respondent exceeded his jurisdiction in striking the defendant's pleadings.[4]

■ Based upon the above authorities, therefore, the respondent did not exceed his jurisdiction in stating that where individual defendants "assert the privilege against self-incrimination ... said defendants will not be permitted to seek affirmative relief by cross or counter-claim," but did exceed his jurisdiction by ordering that the defendants would not be permitted to assert any affirmative defenses.

As to respondent's order that the relators would not be allowed to utilize discovery procedures upon the assertion of their Constitutional privilege, we believe that the respondent exceeded his jurisdiction and abused his discretion.

While it has been determined, that when the privilege is invoked, the court has the power to preclude a defendant from controverting, at trial, through his own records or testimony, evidence of plaintiff with respect to the issues raised by plaintiff's requests to which the privilege is asserted, this determination is limited to that principle. *Swink, supra,* 514 S.W.2d at 561; *Luten, supra,* 710 S.W.2d at 908.

■ But, as discussed previously, a defendant in a civil case cannot be deprived of his defenses to an asserted claim either by denying the allegations of a petition or by asserting affirmative defenses to the claim. In order to complement this well-settled Missouri principle, a defendant in a civil case should not be denied the privilege of utilizing the discovery rules to defend a claim to support his denials or affirmative defenses. To deny to a defendant any and all discovery devices upon a claim of Constitutional privilege would go too far. A defendant, upon the assertion of his Constitutional privilege, should be able to utilize the discovery procedures only insofar as is necessary to defend the claim by way of denials or the assertion of affirmative defenses. While there may arise some practical problems, these difficulties are not insurmountable. This limited use of discovery by way of defensive measures not only complements the rule that a defendant asserting the Constitutional privilege has the right to defend a claim, but also accords with the reasoning and policy underlying *Swink* and its progeny.

■ We hold, therefore, that the order of the respondent precluding relators to "utilize discovery procedures" is overbroad and unduly restrictive. The order should be sufficiently flexible to permit relators to utilize the discovery procedures only insofar as discovery relates to defending the claim whether by denial or the use of any affirmative defense.

While the parties have not furnished us with any authoritative decisions, and our own independent research has failed to disclose any authorities directly in point, we believe that the respondent exceeded his jurisdiction in totally denying the relators the right to utilize any and all of the discovery procedures provided by the Rules, when they assert their Constitutional privilege.

Respondent contends that this case is distinguishable from *Swink* in that the relator's conduct in *Swink* was not contumacious, and relator raised his constitutional privilege at deposition and immediately, and asserted the privilege in good faith. Here, respondent contends that relators' conduct was contumacious, was not in good faith and relators did not timely assert the privilege. We do not find the conduct of relators so contumacious or in bad faith to preclude them from asserting a constitutional right. While it is true that their first responses to the request for production of documents did not assert the privilege, it was orally asserted at the June 22 hearing

4. In line with *Swink,* we held that the respondent did not exceed his jurisdiction in that part of the proposed order that defendant may not testify at trial until she produces herself for deposition and answers questions relevant to the issues.

and formally asserted in their second responses to the requests for discovery. The time lapse was not that significant; extensions were asked for and granted.

■ Rule 61.01 provides for sanctions for failure to make discovery, and a trial court has broad discretion to apply appropriate sanctions. *Russo v. Webb*, 674 S.W.2d 695, 697 (Mo.App.1984); *Sonderman v. Maret*, 694 S.W.2d 864, 866 (Mo. App.1985). Where the record reveals a long course of failure or refusal to produce documents, or the facts clearly show a pattern of repeated disregard to comply with discovery, a court is justified in applying sanctions. *Sonderman, supra*, annot., 56 A.L.R.3d 1109 (1974) (refusal or failure to answer interrogatories); 32 A.L.R.4th 213 (1984) (failure or refusal to answer questions at deposition). We do not find such a pattern of repeated disregard to comply, so as to come within the limitations of *Swink, supra.*

In view of the above, we now quash our preliminary order as to that part of respondent's order of September 19, 1989, which denies permission to relators to seek affirmative relief by way of cross-claim or counterclaim.[5] However, (1) we make permanent our preliminary order precluding the relators from asserting any affirmative defenses in defending the claim and (2) make permanent our preliminary order prohibiting respondent from enforcing that part of this order denying the relators the right to utilize any and all discovery procedures. However, upon proper motion for a protective order by plaintiff-Rosenthal, the respondent may enter a more restrictive order allowing and permitting Liebermans-relators the privilege of utilizing the discovery devices for defensive purposes only.

Lastly, as in *Swink* and *Luten*, that part of respondent's order—precluding relators from controverting, at trial, through their own records or testimony, evidence of plaintiff with respect to the issues raised

by plaintiff's discovery requests to which the privilege is asserted—is within the bounds of his jurisdiction.

Our preliminary order, therefore, is quashed in part and made permanent in part.

GRIMM, P.J., and DOWD, J., concur.

---

**5.** The petition in prohibition did not pray for an order to prohibit respondent from denying relators the right to file a cross or counterclaim because none had been asserted. But although not prayed for, the order of respondent was valid in this respect.