**In re Geraldine Marie BRADY, Debtor.**

**Patricia McBEE, Plaintiff,**

v.

**Geraldine M. BRADY, Defendant.**

**Bankruptcy No. 91–40194.**
**Adv. No. 91–4070.**

United States Bankruptcy Court,
W.D. Missouri.

March 19, 1993.

John K. Allinder, Jack Grate, White, Allinder, Grate & Graham, Independence, MO, for plaintiff.

Kenneth Bigus, DeWitt, Zeldin & Bigus, Kansas City, MO, for defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This matter concerns the dischargeability of a state court judgment for punitive dam-

ages. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find the debt to be nondischargeable.

## FACTUAL BACKGROUND

Debtor-defendant Geraldine Brady was the President of W.L. Brady Investments, Inc., a Missouri corporation ("Brady Investments"). In that capacity, she allowed two mortgages to be placed of record against plaintiff's home, when plaintiff believed one of the mortgages had been paid off. Here's how that happened. Ralph McBee, the deceased husband of the plaintiff,[1] purchased a lot in Kansas City, Jackson County, Missouri on or about February 12, 1988, from Brady Investments. On that date Mr. McBee also executed a promissory note for $86,400 in favor of Brady Investments, secured by a Deed of Trust on the real property. Defendant then negotiated with Boatmen's First National Bank of Raytown, Missouri ("Boatmen's") to finance construction of a home for Mr. McBee and plaintiff. On or about February 26, 1988, Brady Investments executed a promissory note and assigned its interest in the McBee loan to Boatmen's. Mr. McBee, and later plaintiff, at all times dealt with Brady Investments.

The McBees completed construction of their home and obtained an "end loan" from Brady Investments on or about July 6, 1988, in the sum of $96,000. That loan was secured by a new Deed of Trust on the improved real estate. That Deed of Trust was on the same date assigned to the Merchants Bank ("Merchants"), which had advanced to Brady Investments the funds for the "end loan." Defendant represented to the McBees that this "end loan" paid off the Boatmen's construction loan. Defendant also represented to Merchants that its loan had been used to pay off Boatmen's. As proof, defendant on July 8, 1988, supplied Merchants with a copy of a check

purportedly written on the trust account of Brady Investments, payable to the order of "Boatman's [sic] Raytown Bank," and signed by the defendant. Such check was in the amount of $78,589.57 (Pl.Ex. 37). Defendant's representations to the plaintiff and her husband were false. Defendant never used the "end loan" proceeds from Merchants to pay off the construction loan from Boatmen's. Instead, while defendant showed a copy of the check to Merchants supposedly proving payment, the original of such check was never, in fact, tendered to Boatmen's. Brady Investments continued to make payments on the mortgage obligations, without telling Boatmen's that an "end loan" closing had taken place. Meanwhile, the plaintiff and her husband made timely monthly payments first to Brady Investments, and later to a mortgage servicing center to whom the Merchants' mortgage was assigned.

After the loan to Boatmen's had been supposedly paid off, at least as far as plaintiff and Merchants knew, defendant, on behalf of Brady Investments, executed three different renewal and/or extension agreements with Boatmen's, which allowed the loan to remain current if Brady Investments made monthly payments. The loan came due in full on August 23, 1989, and was not extended again.

On or about March 14, 1990, Ralph McBee received a letter from Edward Herman, Jr., Vice President of Boatmen's, informing him that the Promissory Note and Deed of Trust executed by Mr. McBee on February 12, 1988, and assigned to Boatmen's on February 26, 1988, was in default. Plaintiff and her husband then received a notice of foreclosure sale on their home for default in payment on the Boatmen's construction loan. A foreclosure sale was noticed and scheduled for May 9, 1990.

## PROCEDURAL BACKGROUND

In response to the foreclosure notice, Plaintiff and Mr. McBee obtained a temporary injunction to halt the foreclosure, and

---

**1.** Ralph McBee and plaintiff were married on May 27, 1988. Ralph McBee died on August 10, 1990.

filed a petition in the Circuit Court of Jackson County, Missouri on or about August 1, 1990, alleging false pretenses, false representation, fraud, and willful and malicious injury.

■ On or about January 23, 1991, defendant filed a Chapter 7 bankruptcy petition. Plaintiff then filed this adversary proceeding on March 20, 1991, to determine the dischargeability of debt, and also filed a Motion to Lift Stay. Such motion asked that plaintiff be allowed to proceed to trial in the pending state court case and, if successful, to return to this Court and request that any damages awarded be held nondischargeable. On June 12, 1991, this Court granted such motion. On May 21, 1992, following a jury trial, judgment was entered in favor of the plaintiff for $86,400 in compensatory damages and $500,000 in punitive damages.[2] Damages were awarded by the jury based on a finding of fraudulent misrepresentation. Only the punitive damages are at issue here, however, because Boatmen's, which had also been a defendant in the state court case, settled by paying the amount awarded as actual damages.[3] Plaintiff then returned to this Court on June 29, 1992, and asked for summary judgment on the Complaint to Determine Dischargeability of Debt based upon the state court judgment. That motion was denied on November 16, 1992.[4]

On May 31, 1991, in response to plaintiffs Request for Admissions in this Court, defendant invoked her fifth amendment privilege and refused to answer all requests. Similarly, plaintiff asserted this privilege in the state court proceeding. On May 16, 1992, plaintiff again propounded to defendant First Interrogatories and Request for Admissions in the bankruptcy proceeding. There was no response to either the interrogatories or the Request for Admissions. Plaintiff correctly interpreted this lack of response as a continuation of the privilege originally asserted on May 31, 1991. At the hearing on this matter defendant attempted to testify on her own behalf. Plaintiff's attorney objected to this testimony on the grounds that defendant could not invoke her fifth amendment privilege during the discovery phase and then offer testimony about the same matters that were the subject of such discovery.[5] The Court sustained the objection and offered to suspend the proceedings until such time as plaintiff's attorney could depose defendant. Defendant refused this accommoda-

2. Criminal charges were also brought against defendant. Plaintiff offered evidence of a criminal conviction in another matter in support of its prayer for nondischargeability as to the McBee matter. Defendant objected to such evidence. This Court finds such evidence inadmissible under Federal Rules of Evidence Rules 402 and 404.

3. The Boatmen's settlement occurred prior to the verdict being entered. Therefore, the Circuit Court verdict against debtor was reduced by that amount. The punitive damages were awarded only as to debtor, in the amount of $500,000, and Brady Investments, in the amount of $350,000.

4. This Court refused to give collateral estoppel effect to the state court judgment. The Eighth Circuit requires that four criteria must be met before a determination in one court is conclusive in a subsequent proceeding: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment." *Lovell v. Mix-*

*on,* 719 F.2d 1373, 1376 (8th Cir.1983) *citing In re Piper Aircraft Distribution System Antitrust Litigation,* 551 F.2d 213 (8th Cir.1977). Plaintiff submitted the judgment, verdict, and jury instructions to this Court as proof that the injury she suffered resulted from the willful and malicious conduct of the defendant. From those documents, this Court could not make a determination that the issue of willful and malicious injury to plaintiff or her property, as required by 11 U.S.C. § 523(a)(6), was actually litigated in the state court proceeding.

5. The Missouri Supreme Court has held that:

litigants may [not] pick and choose that which they will allow to be discovered. Once the privilege has been invoked to preclude discovery, trial courts have the power not to allow the defendant to change his position and testify at trial to his benefit. Invocation of the privilege at the discovery stage may well serve to preclude a defendant from controverting through his own testimony or records the evidence of the plaintiff at trial.

*State ex rel. Pulliam v. Swink,* 514 S.W.2d 559, 561 (Mo.1974). *See also, State ex re. Lieberman v. Goldman,* 781 S.W.2d 802 (Mo.Ct.App.1989).

tion and, through counsel, stated that she no longer wished to testify.

## DISCUSSION

■ The dischargeability of debt is a matter of federal law governed by the terms of the Bankruptcy Code ("Code"). *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991); *Brown v. Felsen*, 442 U.S. 127, 120–30, 99 S.Ct. 2205, 2208–09, 2211, 60 L.Ed.2d 767 (1979).

Section 523(a)(2) provides for the nondischargeability of debts incurred through false pretenses, a false representation, or actual fraud.[6] However, that section by its terms only blocks dischargeability "to the extent" that money or other property was so obtained. Therefore, courts have held that Section 523(a)(2) is not applicable to punitive damages awards.[7] Those must instead be considered under Section 523(a)(6).

■ Section 523(a)(6) of the Code provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.        .        .        .        .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6). The Eighth Circuit has held that section 523(a)(6) is directed "at the nature of the conduct which gives rise to the debt, rather than the nature of the debt." *In re Miera*, 926 F.2d 741, 745 (8th Cir.1991); *See* 3 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 523.16[3], at 523–129–30 (15th ed. 1993). Therefore, the punitive damages portion of a judgment is

not dischargeable if such damages arise from willful and malicious conduct. *Id.*[8]

■ Willful and malicious conduct under section 523(a)(6) "turns on whether the conduct is (1) headstrong and knowing ('willful') and, (2) targeted at the creditor ('malicious'), at least in the sense that the conduct is certain or almost certain to cause financial harm." *Barclays American Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir.1985). The Eighth Circuit goes on to indicate that a debtor acts with malice if he or she intends or fully expects that the conduct will harm the economic interests of the creditor. *Id.* at 882.

■ I find that the defendant acted both willfully and maliciously toward plaintiff and that, therefore, the punitive damages awarded by the state court jury are nondischargeable. The evidence is uncontradicted that defendant allowed two mortgages to be placed on plaintiff's residence and took steps to hide that fact from the McBees, as well as the holders of the two mortgages. Certainly the defendant's actions in advising the McBees that the Boatmen's obligation would be paid off from the "end loan" proceeds, in submitting to Merchants a copy of a phony check as proof that Boatmen's had been paid off, and in continuing to make monthly payments to Boatmen's after advising the McBees and Merchants that Boatmen's had been paid off, all constitute headstrong and knowing acts. Therefore, willful conduct has been shown.

Defendant's acts were also malicious since they were targeted at the McBees, at least in the sense that such acts were certain or almost certain to cause financial harm to them. Allowing an additional

---

**6.** Section 523(a)(2)(A) provides in relevant part as follows:
(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

**7.** *See, e.g.*, *Palmer v. Levy (In re Levy)*, 951 F.2d 196, 197–98 (9th Cir.1991); *Larson v. Norris (In re Larson)*, 79 B.R. 462, 465 (Bankr.W.D.Mo. 1987).

**8.** Other Courts of Appeal which have found punitive damages to be nondischargeable debts under section 523(a)(6) include: *Britton v. Price (In re Britton)*, 950 F.2d 602 (9th Cir.1991); *Combs v. Richardson*, 838 F.2d 112 (4th Cir. 1988).

mortgage to be placed on a person's home, so that the funds generated by such additional mortgage can be used for other purposes, is certain or almost certain to cause financial harm to the homeowner.

 Defendant offered no evidence to justify her actions, or to show that she intended to benefit other creditors rather than to harm the McBees. *Long* at 882. In fact, defendant has consistently refused to testify in any of the proceedings related to this matter or offer any explanation for her conduct. While a debtor is free to assert her fifth amendment privilege against self-incrimination during the bankruptcy proceedings, she "may not turn the shield of the Fifth Amendment into a sword to cut h[er] way to a discharge while carrying h[er] property with h[er]." *In re Connelly,* 59 B.R. 421, 447–48 (Bankr. N.D.Ill.1986). *See also Butcher v. Bailey,* 753 F.2d 465, 467 n. 3 (6th Cir.), *cert. dismissed, Bailey v. Butcher,* 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985). Other courts go on to state that "an individual debtor in a bankruptcy case, who is also a target of criminal investigation, might be required to relinquish a fifth amendment privilege against self-incrimination in order to avoid losing a discharge in bankruptcy." *Charter Federal Savings Ass'n v. Rezak, (In re Lederman),* 140 B.R. 49, 53 (Bankr. E.D.N.Y.1992) *quoting Amsave Credit Corp. v. Marceca (In re Marceca),* 131 B.R. 774, 778 (Bankr.S.D.N.Y.1991). Defendant in this case failed to offer any justification for her conduct, despite being given the option of suspending the proceeding so that her testimony could be offered over plaintiff's objection.[9] Since the evidence is uncontroverted that defendant's conduct was certain or almost certain to cause financial harm to the McBee's, plaintiff has proven that defendant acted with malice.

For the above reasons, I find that Plaintiff has carried her burden of proving defendant's conduct was both willful and malicious within the meaning of 11 U.S.C. § 523(a)(6) and that, therefore, the judg-

ment for punitive damages is nondischargeable.

An Order consistent with the Memorandum Opinion will be entered this date.

---

9. In *Long,* by contrast, the defendant offered undisputed testimony that he had diverted collateral of a secured creditor in order to benefit creditors as well as himself. *Id.* at 882.